# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIBERTY INSURANCE UNDERWRITERS INC., <br><br> *Plaintiff,* <br><br> v. <br><br> COCRYSTAL PHARMA, INC., <br><br> *Defendant.* | Case. No. 19- <br><br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND FOR RECOUPMENT OF DEFENSE COSTS

Plaintiff Liberty Insurance Underwriters Inc. ("Liberty") brings this Complaint against Cocrystal Pharma Inc. ("Cocrystal") for (a) a declaration that there is no insurance coverage for any settlement, judgment, or Defense Costs[1] in any of the underlying securities class action or shareholder derivative suits (the "Underlying Suits"); (b) a declaration that the $1 million in Defense Costs that Liberty, under a reservation of rights, previously advanced to Cocrystal in connection with a Securities and Exchange Commission ("SEC") investigation are not covered; and (c) recoupment of those Defense Costs. In support of its Complaint, Liberty alleges as follows:

## I.    INTRODUCTION

1.    This an insurance coverage dispute. Liberty seeks a declaration of non-coverage in connection with an insurance policy that it issued to Cocrystal – Executive Advantage Policy DONYAAXOGP002 (the "2015-18 Policy"). A copy of the 2015-18 Policy is attached as Exhibit 1.

---

[1] Capitalization and emphasis are consistent with that in the Liberty Policy at issue.

2.      The instant coverage dispute concerns Cocrystal's demands to Liberty for payment of a potential settlement of the Underlying Suits and for payment of the related Defense Costs. Liberty files this suit in the face of Cocrystal's demand for non-covered payments, new accusations of bad faith, and the threat of Cocrystal seeking excess damages from Liberty if Liberty does not capitulate to its demands.

3.      In 2014, Cocrystal elected to forgo insurance that might have covered the Underlying Suits by deciding against extending its then existing coverage to claims arising out of or related to Wrongful Acts taking place prior to December 27, 2013, which Wrongful Acts are at the heart of the Underlying Suits.

4.      Nonetheless, five years after declining such coverage, Cocrystal is now demanding that Liberty provide the very coverage that Cocrystal rejected in 2014.

5.      Specifically, Cocrystal has demanded that Liberty fund Cocrystal's proposed settlement of the Underlying Suits pursuant to which Cocrystal seeks to resolve allegations that it, certain of its directors and officers, and others fraudulently inflated the price of Cocrystal's stock to defraud shareholders out of more than $10 million during the proposed class period of September 23, 2013 through September 7, 2018.

6.      In 2017, Liberty advanced, subject to a reservation of rights, approximately $1 million in Defense Costs to Cocrystal in connection with Cocrystal's response to the SEC's investigation into allegations of stock-price manipulation.

7.      Recently, facts were disclosed in connection with the Underlying Suits and Cocrystal's demand for payment of the proposed settlement, which facts establish that the SEC investigation was not subject to coverage under the 2015-18 Policy. Cocrystal has refused to

- 2 -

repay Liberty for the advance of the Defense Costs, even though there is no coverage for those Defense Costs.

8.      Accordingly, Liberty brings this action to protect its rights and (a) obtain a declaration that there is no coverage for the settlement of or Defense Costs relating to the Underlying Suits; (b) obtain a declaration that the $1 million previously advanced as Defense Costs for the SEC investigation are not covered; and (c) recoup the Defense Costs previously advanced for the SEC investigation.

## II.    PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Liberty is an Illinois corporation with a principal place of business located in located in Boston, Massachusetts.

10.     Upon information and belief, defendant Cocrystal is a Delaware corporation with a principal place of business located in Tucker, Georgia.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between parties deemed to be citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the defendant, Cocrystal, is a Delaware corporation and therefore is deemed to reside in this District and is subject to personal jurisdiction here.

## III.   GENERAL ALLEGATIONS

### A.    Cocrystal Declines Tail Coverage for Pre-2014 Acts

13.     Cocrystal was formed on or about April 15, 2014 as a result of a merger between Biozone Pharmaceuticals Inc. ("Biozone") and Cocrystal Discovery Inc.

14.     Approximately one year prior, in March 2013, Liberty issued Executive Advantage Policy DONYAADIRJ003 (the "2013-14 Policy") to Biozone, which subsequently became Cocrystal by merger.

15.     By its terms, the 2013-14 Policy expired on March 21, 2014.

16.     Although Liberty offered to extend to Cocrystal the coverage originally provided to Biozone under the 2013-14 Policy by issuing a rider to provide tail coverage, and that tail coverage was initially bound, Cocrystal elected not to buy the tail coverage and decided to let the 2013-14 Policy simply expire by its original terms. That is, Cocrystal made the conscious and intentional decision to forgo the very coverage that it now seeks.

17.     In 2014, Liberty issued Executive Advantage Policy DONYAAXOGP001 to Cocrystal, which provided claims made and reported coverage from January 2, 2014 to January 2, 2015.

**B.     The 2015-18 Policy**

18.     In January 2015, Liberty issued the 2015-18 Policy, which was initially issued for the period January 2, 2015 to January 2, 2016 but was extended by Endorsement No. 41 to May 6, 2016, further by Endorsement No. 43 to May 6, 2018, and finally by Endorsement No. 45 to May 21, 2018.

19.     The 2015-2018 Policy is a "claims made and reported policy," which requires that all Claims submitted for coverage under the Policy be both made and reported on or before the last date of the Policy – in this case May 21, 2018. The 2015-18 Policy has a limit of $5 million per Claim, with a self-insured retention ranging from $0 to $500,000, depending on the type of Claim.

20.     Under the 2015-18 Policy, "Claim" is defined as follows:

25.3 "**Claim**" means:

(a) a written demand for monetary or non-monetary relief or a request to toll any statute of limitations against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(b) the commencement of a civil or criminal judicial proceeding or arbitration against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(c) the commencement of a formal administrative or regulatory proceeding against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(d) the commencement of a formal criminal, administrative, or regulatory investigation against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(e) the receipt by an **Insured Person** of a Wells Notice from the SEC;

(f) an official request for Extradition of any **Insured Person**; or

(g) the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of Extradition;

including any appeal therefrom. A **Claim** will be deemed first made on the earliest date any **Insured Person** is arrested by a foreign policing authority or receives a written demand, complaint, indictment, notice of charges, or order of formal investigation in such **Claim**.

(2015-18 Policy End. No. 23.)

21.     The 2015-18 Policy further provides that all Claims arising from the same

Wrongful Act or Interrelated Wrongful Acts shall be deemed one Claim. Specifically, the 2015-

18 Policy provides as follows:

9.2 All **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim** and subject to a single limit of liability. Such **Claim** shall be deemed first made on the date

- 5 -

the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

(2015-18 Policy § 9.2.)

22.     Under the 2015-18 Policy, "Loss" is defined in relevant part as follows:

"**Loss**" means sums which the **Insured Person**(s) or, with respect to Insuring Agreement 1.3, the **Insured Organization** are legally obligated to pay solely as a result of any **Claim** insured by the **Policy**, including **Defense Costs**, damages, judgments, (including pre and post judgment interest), settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award. Loss shall not include fines, penalties, taxes, dividends or distributions of profits or other assets of the **Insured Organization**, any amount allocated to uncovered loss pursuant to Section 13, amounts for which there is no legal recourse against the Insureds, or matters uninsurable pursuant to any applicable law, including but not limited to damages or settlements which are in the nature of restitution, disgorgement or the return of ill-gotten gains, except as otherwise provided in the paragraph below.

Notwithstanding the foregoing paragraph, with respect to a **Claim** against any **Insured Person**(s), the **Insurer** shall not assert that the portion of any settlement in a Securities Action arising out of an Initial Public Offering or subsequent public offering of securities issued by the Insured Organization constitutes uninsurable loss due to alleged violations of Sections 11, 12 or 15 of the Securities Act of 1933 as amended, or any similar state, local or common law.

(2015-18 Policy End. No. 29.)

23.     Under the 2015-18 Policy, "Wrongful Act" is defined as follows:

25.20 "**Wrongful Act**" means:

(a) any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the **Insured Persons** in their capacities as such or in an **Outside Position**, or, with respect to Insuring Agreement 1.3, by the **Insured Organiza**tion; or (b) any matter claimed against the **Insured Persons** by reason of their status as **Insured Persons**.

(2015-18 Policy End. No. 6.)

- 6 -

24.     Under the 2015-18 Policy, "Insured Person" is defined in relevant part as follows:

> "**Insured Person(s)**" means:
>
> (a) one or more natural persons who were, now are, or shall
> hereafter be duly elected or appointed directors or officers of the
> **Insured Organization**, or, with respect to a Subsidiary operating
> outside the United States, their functional equivalent, regardless of
> title; and
>
> (b) with respect to a **Securities Action** only, any other natural
> persons who were, now are, or shall hereafter be employees of the
> **Insured Organization**.

(2015-18 Policy § 25.10.)

25.     Cocrystal, in entering into the 2015-18 Policy, agreed that the 2015-18 Policy would not provide coverage for, among other things, any Claim for, based upon, arising from, or in any way related to any Wrongful Act taking place in whole or in part prior to December 27, 2013.

26.     Specifically, the 2015-18 Policy Prior Acts Exclusion provides that Liberty "shall not be liable to make any payment for **Loss** in connection with any **Claim** . . . for, based upon, arising from, or in any way related to any **Wrongful Act** taking place in whole or in part prior to December 27, 2013." (2015-18 Policy End. No. 12 Prior Acts Exclusion.). As a result, the unambiguous language of the Prior Acts Exclusion excludes from coverage any Claim arising from *any* Wrongful Act taking place in whole or in part prior to December 27, 2013, regardless of the identity of the individual who committed the Wrongful Act.

27.     The 2015-18 Policy notice provision provides as follows:

> 7.1 The **Insureds**, as a condition precedent to their rights under
> this Policy, shall report every **Claim** to the Insurer as soon as
> practicable but in no event later than the 60 days after the Chief
> Financial Officer, General Counsel, Human Resources Manager, or
> functional equivalent, becomes aware of such **Claim** but in no

event later than the end of the **Policy Period** or **Discovery Period**, if applicable.

(2015-18 Policy End. No. 32.)

### C.    <u>Cocrystal Hides the True Nature of the SEC Investigation</u>

28.    In October 2015, Cocrystal or certain of its directors or officers received one or more subpoenas *duces tecum* issued by the SEC in connection with the SEC's investigation into certain matters regarding the price of Cocrystal's stock.

29.    Cocrystal provided notice to Liberty on February 5, 2016.

30.    Cocrystal requested that Liberty advance Defense Costs to Cocrystal for the fees it incurred in responding to the SEC subpoenas and investigation.

31.    The 2015-18 Policy provides in part with respect to Defense Costs:

> 3.3 The Insurer shall, subject to Section 13, advance covered **Defense Costs** incurred by the **Insureds** in excess of the applicable Retention. If it is determined by negotiation, litigation, or arbitration that any such **Defense Costs** are not covered under this Policy, the **Insureds** agree to repay the Insurer the amount of such **Defense Costs** not covered.

(2015-18 Policy § 3.3.)

32.    Cocrystal then pressured Liberty to advance Defense Costs while hiding from Liberty that the scope of the SEC investigation was for, based upon, arising from, or related to Wrongful Acts taking place prior to December 27, 2013.

33.    Liberty, unaware that the scope of the SEC investigation was for, based upon, arising from, or related to Wrongful Acts taking place prior to December 27, 2013, agreed, under the 2015-18 Policy and subject to a reservation of rights, to advance Cocrystal's Defense Costs in connection with responding to the SEC subpoenas and investigation.

34.     In approximately June 2017, Liberty began advancing these Defense Costs, which advances ultimately totaled approximately $1,000,000.

35.     On May 21, 2018, the 2015-18 Policy period ended.

**D.      The Post-Policy Lawsuits**

36.     On September 7, 2018, the SEC filed suit against certain individuals, including former Cocrystal directors or officers, and certain entities, alleging that they had orchestrated and engaged in three "highly profitable 'pump-and-dump' schemes" from 2013 through 2018 with respect to the stock of three public companies, identified only as "Company A, Company B, and Company C" (the "SEC Complaint"). The SEC Complaint alleges that the stock manipulation scheme concerned conduct that began in November 2010.

37.     Two weeks later, on September 20, 2018, plaintiff Anthony Pepe, individually and on behalf of all other persons similarly situated, filed suit (the "*Pepe* Class Action") against Cocrystal and certain of its directors and officers and others, mirroring the SEC's Complaint allegations and alleging that Cocrystal and the individual defendants had fraudulently inflated the price of Cocrystal's stock during the class period September 23, 2013 through September 7, 2018. Further, the putative class action alleges that the claims were based on a scheme that had originated in November 2010.

38.     On October 12, 2018, long after the 2015-18 Policy had ended, Cocrystal provided Liberty with notice of the *Pepe* Class Action under the 2015-18 Policy.

39.     On January 16, 2019, plaintiff Susan Church filed a shareholders derivative suit (the "*Church* Derivative Action") against Cocrystal and certain Cocrystal directors. The *Church* Derivative Action involves similar allegations to the *Pepe* Class Action.

40.     On January 23, 2019, Cocrystal provided Liberty with notice of this suit under the 2015-18 Policy.

41.     On August 15, 2019, Plaintiff Trent Nichols filed a shareholders derivative suit (the "*Nichols* Derivative Action") against Cocrystal and certain Cocrystal directors. The *Nichols* Derivative Action involves similar allegations to the *Pepe* Class Action. The *Pepe* Class Action, *Church* Derivative Action, and *Nichols* Derivative Action constitute the three actions defined above as the Underlying Suits.

42.     Cocrystal subsequently provided Liberty with notice of the *Nichols* Derivative Action under the 2015-18 Policy.

43.     None of these suits constituted a Claim triggering coverage under the 2015-2018 Policy. No Underlying Suit was first "made and reported" prior to the May 21, 2018 termination of the 2015-2018 Policy. Further, each Underlying Suit was "based upon, arising from, or related to a Wrongful Act taking place in whole or in part prior to December 27, 2013," which is expressly excluded from coverage under the 2015-18 Policy. Liberty so advised Cocrystal.

44.     What's more, the SEC Complaint and the Complaints in The *Pepe* Class Action, *Church* Derivative Action, and *Nichols* Derivative Action finally disclosed to Liberty what Cocrystal had not – the SEC investigation was also "for, based upon, arising from, or related to a Wrongful Act taking place in whole or in part prior to December 27, 2013."

**E.      Cocrystal Seeks to Transform the 2015-18 Policy into the Tail Coverage It Declined in 2014**

45.     On November 22, 2019 Cocrystal and certain directors and officers and other defendants participated in a mediation regarding the *Pepe* Class Action, the *Church* Derivative

Action, and the *Nichols* Derivative Action. (Because Liberty was not informed of the details of the negotiations, there is no risk of breach of any mediation privilege or confidentiality.)

46.     Shortly thereafter Cocrystal advised that a tentative settlement had been reached and demanded that Liberty fund the lion's share of the settlement under the 2015-18 Policy. Cocrystal also demanded that Liberty reimburse it for its Defense Costs.

47.     Liberty declined Cocrystal's demand based on the terms the 2015-18 Policy. Liberty raised again the lack of coverage for the prior Wrongful Acts, among other grounds for denying Cocrystal's demand for payment.

48.     In addition, Liberty informed Cocrystal that the Underlying Suits were made outside of the Policy Period and further objected to the amount of the settlement allocated to Liberty as exorbitant and unreasonable, particularly given the other defendants' relative exposure and alleged roles in the underlying conduct.

49.     In response, Cocrystal demanded payment again from Liberty, rejected Liberty's objections, accused Liberty of acting in bad faith, and threatened the specter of excess liability to Liberty should it not reconsider and capitulate.

## COUNT I
## Declaratory Judgment That There Is No
## Coverage for any of the Underlying Suits

50.     Liberty incorporates the allegations of the preceding paragraphs.

51.     There is an actual justiciable case and controversy between Liberty and Cocrystal regarding whether the 2015-18 Policy provides coverage for the proposed settlement or any of the *Pepe* Class Action, *Church* Derivative Action, or *Nichols* Derivative Action, including any of Cocrystal's Defense Costs related to any of these actions or the proposed settlement.

52.     There is no coverage under the 2015-18 Policy for any of these suits or related Defense Costs or settlement based on, among other things, the Prior Acts Exclusion.

53.     Moreover, no Underlying Suit was first "made and reported" within the 2015-2018 Policy period, which is a condition precedent to coverage.

54.     In addition, the amount of the settlement allocated to Liberty is unreasonable and exorbitant.

55.     Cocrystal rejected Liberty's denial of coverage, accused Liberty of bad faith, demanded payment, and threatened Liberty with excess exposure.

56.     Cocrystal's demands and claims are without basis, and Liberty is entitled to a declaration that there is no coverage for any of these suits or related Defense Costs or settlement. Liberty is also entitled to a declaration that it has not engaged in bad faith conduct in any manner.

**WHEREFORE**, Liberty requests that judgment be entered in its favor and against Cocrystal, together with the following relief:

A.     A declaration that there is no coverage under the 2015-18 Policy for any of the *Pepe* Class Action, *Church* Derivative Action, or *Nichols* Derivative Action or any of Cocrystal's Defense Costs related to any of these actions or any settlement of these actions;

B.     A declaration that Liberty has not engaged in bad faith conduct:

C.     An award to Liberty for its costs incurred in this action; and

D.     Such other and further relief as this Court deems just and proper.

### COUNT II
### Declaratory Judgment that the
### Previously Advanced Defense Costs for the SEC Investigation Are Not Covered

57.     As explained above, Liberty, under a reservation of rights, previously advanced certain Defense Costs to Cocrystal relating to Cocrystal's response to SEC subpoenas and an

SEC investigation. At the time it did so, Cocrystal had withheld the true scope of the SEC investigation, and Liberty was unaware that the subpoenas and investigation concerned Wrongful Acts taking place prior to December 27, 2013.

58.     As disclosed in the recent filings and recent communications from Cocrystal, the scope of the SEC subpoenas and investigation concerned or was for, based upon, arising from, or related to a Wrongful Act taking place in whole or in part prior to December 27, 2013.

59.     Pursuant to the Prior Acts Exclusion, there is no coverage for any Defense Costs incurred in connection with the SEC subpoenas and investigation.

60.     Further, the 2015-18 Policy provides that "[i]f it is determined by negotiation, litigation, or arbitration that any such Defense Costs are not covered under this Policy, the Insureds agree to repay the Insurer the amount of such Defense Costs not covered." (2015-18 Policy § 3.3.)

61.     Cocrystal has not repaid the advanced Defense Costs.

62.     Accordingly, there is an actual justiciable case and controversy between Liberty and Cocrystal regarding whether Liberty is entitled to repayment of the advanced Defense Costs.

63.     Liberty is entitled to a declaration that the advanced Defense Costs are not covered under the 2015-18 Policy.

**WHEREFORE**, Liberty requests that judgment be entered in its favor and against Cocrystal, together with the following relief:

A.     A declaration that there is no coverage under the 2015-18 Policy for the Defense Costs Liberty previously advanced to Cocrystal;

B.     An award to Liberty for its costs incurred in this action; and

C.     Such other and further relief as this Court deems just and proper.

- 13 -

**COUNT III**
**Recoupment of Defense Costs Previously Advanced for the SEC Investigation**

64.     Liberty incorporates the allegations of the preceding paragraphs.

65.     The previously advanced Defense Costs for the SEC investigation are not covered based on, among other things, the Prior Acts Exclusion, and Liberty is entitled to repayment of the approximately $1 million in fees that Liberty advanced to Cocrystal under a reservation of rights.

66.     To date, Cocrystal, without basis, has refused to repay Liberty for these fees, and Liberty has suffered damages as a direct result.

**WHEREFORE**, Liberty requests that judgment be entered in its favor and against Cocrystal, together with the following relief:

A.     An award of compensatory damages in excess of $75,000;

B.     An award to Liberty of its costs incurred in this action; and

C.     Such other and further relief as this Court deems just and proper.

## IV.     DEMAND FOR JURY TRIAL

Liberty hereby demands a trial by jury on all issue so triable.

- 14 -

Date: December 16, 2019                      **SMITH, KATZENSTEIN & JENKINS LLP**

                                             */s/ Robert J. Katzenstein*
                                             Robert J. Katzenstein (No. 378)
                                             Brandywine Building
                                             1000 West Street, Suite 1501
                                             P.O. Box 410
                                             Wilmington, DE 19899
                                             302-652-8400
                                             rjk@skjlaw.com

                                             *Attorney for Plaintiff Liberty Insurance Underwriters Inc.*

Of Counsel:

**HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER**
Ronald P. Schiller
rschiller@hangley.com
Robert L. Ebby
rebby@hangley.com
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200 (telephone)