# Exhibit 1

**LIBERTY INTERNATIONAL UNDERWRITERS**

# EXECUTIVE ADVANTAGE POLICY

Liberty
International
Underwriters



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")
55 Water Street, 18th Floor, New York, NY 10041
Toll-free number: 1-800-677-9163

### EXECUTIVE ADVANTAGE POLICY

### DECLARATIONS

> NOTICE:  THIS IS A CLAIMS MADE POLICY.  THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE, AND REPORTED TO THE INSURER AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE END OF THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.
>
> AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE THE LIMIT OF LIABILITY AND SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.
>
> THE INSURER DOES NOT HAVE ANY DUTY TO DEFEND ANY CLAIM.

POLICY NUMBER: DONYAAXOGP002
RENEWAL OF:    DONYAAXOGP001

PRODUCER: NFP Property & Casualty Services Inc.
340 Madison Avenue, 21st Floor
New York, NY 10173

| | | |
|---|---|---|
| ITEM I. | NAME AND ADDRESS OF PARENT ORGANIZATION: | |
| | CoCrystal Pharma Inc. | |
| | 19805 North Creek Parkway | |
| | Bothell, WA 98011 | |
| ITEM II. | POLICY PERIOD: | January 2, 2015 to January 2, 2016 |
| | | (12:01 A.M. at the address set forth in Item I) |
| ITEM III. | LIMIT OF LIABILITY: | $5,000,000 in the aggregate for the Policy Period |
| ITEM IV. | RETENTIONS: | |
| | Insuring Agreement 1.1 | None |
| | Insuring Agreement 1.2 | $250,000 in the aggregate each Claim |
| | Insuring Agreement 1.3 | $250,000 in the aggregate each Securities Action |
| ITEM V. | DISCOVERY PERIOD: | |
| | Premium | $82,687 |
| | Duration | 1 year |

2

US/D&O 2000-DEC (ED. 05 06)



## Executive Advantage Policy

| ITEM VI. | PRIOR LITIGATION DATES: | |
|---|---|---|
| | Insuring Agreements 1.1 and 1.2 | December 27, 2013 |
| | Insuring Agreement 1.3 | December 27, 2013 |

| ITEM VII. | PREMIUM: | $66,150 |
|---|---|---|
| | TRIA Premium: | $0 |

| ITEM VIII. | ENDORSEMENTS FORMING PART OF THIS POLICY AT ISSUANCE: |
|---|---|
| | See Attached Schedule of Endorsements |

This Declarations page, together with the Application, the attached Executive Advantage Policy Form, and all endorsements thereto, shall constitute the contract between the Insurer and the Insureds.  This Policy is valid only if signed below by a duly authorized representative of the Insurer.

PRESIDENT
Christopher L. Peirce

SECRETARY
Dexter R. Legg

2   2

US/D&O 2000-DEC (ED. 05 06)



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
### (A Stock Insurance Company, hereinafter the "Insurer")

### EXECUTIVE ADVANTAGE POLICY

(Liberty Insurance Underwriters Inc., is referenced in this Policy as "the Insurer")

(Words and phrases printed in **bold**, other than in the headings, are defined in Section 25 below.)

In reliance upon the truthfulness and accuracy of the statements made in the **Application**, in consideration of, and subject to, the payment of premium when due, and subject to the terms, conditions, and exclusions of this Policy, the Insurer and the **Insureds** agree as follows:

1. **Insuring Agreements:**

   1.1 **Insured Persons' Liability:** The Insurer shall pay on behalf of the **Insured Persons** all **Loss** which they shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place before or during the **Policy Period**.

   1.2 **Insured Organization Reimbursement:** The Insurer shall pay on behalf of the **Insured Organization** all **Loss** which it is permitted or required by law to indemnify the **Insured Persons** as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place before or during the **Policy Period**.

   1.3 **Securities Action Liability:** The Insurer shall pay on behalf of the **Insured Organization** all **Loss** which it shall become legally obligated to pay as a result of a **Securities Action** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Organization** for a **Wrongful Act** which takes place before or during the **Policy Period**.

2. **Outside Position Liability:**

   2.1 This Policy, subject to its terms, conditions, and exclusions, covers any **Insured Person** serving in an **Outside Position**. Such coverage shall be specifically excess of any: (i) indemnification provided by the **Outside Entity** in which the **Insured Person** serves in such **Outside Position**; and (ii) insurance available from or provided by such **Outside Entity**, regardless of whether or not such other insurance policy is written specifically excess of this Policy or refers to this Policy's policy number.

   2.2 Payment by the Insurer or any member company of the Liberty Mutual Group under another insurance policy as a result of a **Claim** against an **Insured Person** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Policy.

   2.3 Coverage under this Section 2 shall not apply to any **Claim** that is brought or maintained with the solicitation, assistance or participation of the **Outside Entity** in which an **Insured Person** serves in an **Outside Position** or any director, officer, trustee, regent, governor or employee of such **Outside Entity**.

   2.4 Nothing in this Section 2 shall be construed to extend coverage under this Policy to the **Outside Entity** in which such **Insured Person** serves in such **Outside Position**, or to the other directors, officers, or employees of such **Outside Entity**.

1   10

US/D&O 2000-POL



# Executive Advantage Policy

3.  Defense Costs and Settlements:

   3.1   It shall be the duty of the **Insureds**, not the Insurer, to defend any **Claim**. The Insurer shall have the right to associate in the defense and settlement of any **Claim** reasonably likely to involve this Policy. The Insurer may investigate, as it deems appropriate, any **Claim**, circumstance, or **Wrongful Act** involving the **Insureds**.

   3.2   The **Insureds** shall not incur any **Defense Costs**, admit any liability, assume any obligation, agree to any settlement, or make any settlement offer with respect to any **Claim** without the Insurer's prior written consent, which shall not be unreasonably withheld.  The Insurer shall not be liable for any **Defense Costs** incurred or any admissions, obligations, agreements, or settlements made by the **Insureds** without the Insurer's prior written consent.

   3.3   The Insurer shall, subject to Section 13, advance covered **Defense Costs** incurred by the **Insureds** in excess of the applicable Retention.  If it is determined by negotiation, litigation, or arbitration that any such **Defense Costs** are not covered under this Policy, the **Insureds** agree to repay the Insurer the amount of such **Defense Costs** not covered.

4.  Cooperation: As a condition precedent to the **Insureds'** rights under this Policy, they shall give to the Insurer all information and cooperation as the Insurer reasonably may require and shall do nothing that may prejudice the Insurer's position or its rights of recovery.

5.  Exclusions: The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**:

   5.1   for bodily injury, sickness, disease, death, emotional distress, mental anguish, false arrest or imprisonment, abuse of process, malicious prosecution, libel, slander, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction, or for damage to, destruction of, or loss of use of any tangible property;

   5.2   for any error, misstatement, misleading statement, act, omission, neglect or breach of duty by any **Subsidiary** or such **Subsidiary's Insured Persons** if such error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly occurred, in whole or in part, when such entity was not a **Subsidiary**;

   5.3   based upon, arising from, or in any way related to any error, misstatement, misleading statement, act, omission, neglect or breach of duty which has been reported or has been the subject of any notice under any insurance policy of which this Policy is a renewal or replacement or under any other policy which it may succeed in time;

   5.4   based upon, arising from, or in any way related to an actual or alleged violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar federal, state, local or common law;

   5.5   based upon, arising from, or in any way related to:

      (a)  any demand, suit, or other proceeding against any **Insured** which has been made, which existed, or was pending prior to the applicable Prior Litigation Date set forth in Item VI of the Declarations; or

      (b)  the same or substantially the same facts, circumstances or allegations involved in such demand, suit, or other proceeding;

   5.6   brought or maintained by or on behalf of the **Insured Organization** or any **Insured Person**, in any capacity, except:

US/D&O 2000-POL



## Executive Advantage Policy

(a) a **Claim** that is a derivative action brought or maintained on behalf of the **Insured Organization** by one or more shareholders of the **Insured Organization** who are not **Insured Persons** and who bring or maintain the action without the solicitation, assistance or participation of any **Insured Person**;

(b) a **Claim** by an **Insured Person** for the actual or alleged harassment of, wrongful termination of, or discrimination against such **Insured Person**;

(c) a **Claim** in the form of a cross-claim, third-party claim, or otherwise for contribution or indemnity, if such **Claim** directly results from another **Claim** that otherwise is covered under this Policy; or

(d) in the event of the **Insured Organization's** bankruptcy pursuant to the United States Bankruptcy Code, a **Claim** by an examiner, trustee or other legal representative of the **Insured Organization** who is duly appointed by a Bankruptcy Court;

5.7   based upon, arising from, or in any way related to the actual, alleged, or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants**; provided that this exclusion shall not apply to any **Claim** brought by a securities holder of the **Insured Organization** based on such securities holder's interest in such securities who is not an **Insured Person** and who is acting totally independently of, and totally without the solicitation, assistance or participation of any **Insured Person** or any **Insured Organization**;

5.8   based upon, arising from, or in any way related to an **Insured Person** serving as a director, officer, trustee, regent, governor, volunteer, employee, or similar position of any entity other than the **Insured Organization**; provided that this exclusion shall not apply with respect to any coverage afforded under Section 2, Outside Position Liability;

5.9   based upon, arising from, or in any way related to any **Insureds** gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled; or

5.10   based upon, arising from, or in any way related to any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by any **Insured** if a judgment or other final adjudication adverse to the **Insured** establishes such an act, omission or willful violation.

For purposes of determining the applicability of Sections 5.9 and 5.10, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** of a director of the **Insured Organization** or **Executive Officer** shall be imputed to the **Insured Organization**.

6.   Application Representations and Severability:

6.1   The **Insureds** represent that the statements and representations contained in the **Application** are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such statements and representations.

6.2   The **Insureds** agree that if the **Application** contains any statements or representations that are untrue, this Policy shall be void as to:

(a) any **Insured Person** who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other **Insured Person**. This provision shall also apply to the **Insured Organization** under Insuring Agreement 1.2 to the extent it indemnifies such **Insured Person**;

(b) the Insured Organization under Insuring Agreement 1.3, if any director of the **Insured Organization** or any **Executive Officer** knew the facts that were not truthfully disclosed;



## Executive Advantage Policy

whether or not such **Insured Person** or **Executive Officer** knew of such untruthful disclosure in the **Application**.

7. **Reporting Requirements:**

   7.1   The **Insureds**, as a condition precedent to their rights under this Policy, shall report every **Claim** to the Insurer as soon as practicable but in no event later than 60 days after the end of the **Policy Period** or **Discovery Period**, if applicable.

   7.2   Notice of any **Claim**, circumstance, or **Wrongful Act** shall be forwarded to:

   Liberty International Underwriters USA
   55 Water Street, 18th Floor
   New York, NY 10041
   Attention: Specialty Casualty Claims

   All other notices under this Policy shall be given to the same addressee but to the attention of the Specialty Casualty Division.

   7.3   All notices under this Policy shall be sent in writing by mail, prepaid express courier, or facsimile and shall be effective upon receipt thereof by the addressee.

8. **Notice of Circumstance or Wrongful Act:**  If during the **Policy Period** the **Insureds** become aware of any circumstance or **Wrongful Act** that reasonably may be expected to give rise to a **Claim**, and if such circumstance or **Wrongful Act** is reported to the Insurer during the **Policy Period** in writing with details as to the nature and date of such circumstance or **Wrongful Act**, the identity of any potential claimant, the identity of any **Insured Person** involved in such circumstance or **Wrongful Act**, and the manner in which the **Insureds** first became aware of such circumstance or **Wrongful Act**, then any **Claim** subsequently arising from such circumstance or **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the circumstance or **Wrongful Act** was first duly reported to the Insurer.

9. **Limit of Liability:**

   9.1   The Insurer's maximum aggregate Limit of Liability for all **Loss** under this Policy shall be the amount set forth in Item III of the Declarations.  Amounts incurred as **Defense Costs** shall reduce the Limit of Liability.

   9.2   All **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim** and subject to a single limit of liability.  Such **Claim** shall be deemed first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

10. **Retentions:**

   10.1   The Insurer shall be liable to pay only the amount of covered **Loss** in excess of the applicable Retention amount set forth in Item IV of the Declarations.  Such applicable Retention shall be uninsured and shall be borne by the **Insured Organization.**

   10.2   If **Loss** arising from a single **Claim** is covered under more than one Insuring Agreement, the applicable Retentions shall be applied separately to each part of such **Loss**, but the sum of Retentions so applied shall not exceed the largest applicable Retention.

   10.3   Notwithstanding the foregoing, solely with respect to a **Securities Action**:

   (a)   the applicable Retention shall apply only to **Defense Costs**; and

US/D&O 2000-POL



## Executive Advantage Policy

(b) no Retention shall apply to **Loss** and the Insurer shall reimburse the **Insureds** for **Defense Costs** otherwise covered under this Policy, if all **Insureds** in such **Securities Action** obtain a final non-appealable judgment of no liability in their favor by reason of a motion to dismiss, motion for summary judgment, or trial.

11. **Indemnification:**

   11.1   With respect to any covered **Claim**, if the **Insured Organization** is permitted or required by law to indemnify the **Insured Persons**, or to advance **Defense Costs** on their behalf, and does not in fact do so other than for reasons of **Insolvency**, then the Insurer's liability shall be subject to the Retention amount applicable to Insuring Agreement 1.2, as set forth in Item IV of the Declarations.

   11.2   The shareholder and board of directors resolutions of the **Insured Organization** shall be deemed to provide indemnification and advancement of **Defense Costs** to the fullest extent permitted or required by law.

12. **Priority of Payment:** If **Loss** covered under Insuring Agreement 1.1 and any other Insuring Agreement becomes due and payable concurrently, the Insurer shall pay such **Loss** in the following order of priority:

   12.1   The Insurer shall first pay such **Loss** under Insuring Agreement 1.1 on behalf of the **Insured Persons**; and

   12.2   Whatever amount of the Limit of Liability remains after the payment of such **Loss**, the Insurer then shall pay such **Loss** under Insuring Agreements 1.2 and 1.3, as applicable, on behalf of the **Insured Organization**.

13. **Allocation:**

   13.1   If a **Claim** gives rise to **Loss** covered under this Policy and **loss** not covered under this Policy, either because a **Claim** includes both covered and uncovered matters or both covered and uncovered parties, the **Insureds** and the Insurer shall allocate such amount between covered **Loss** and uncovered loss.

   13.2   If there can be no agreement between the Insurer and the **Insured** as to the amount of **Defense Costs** to be advanced in connection with such **Claim**, the Insurer shall advance **Defense Costs** which it reasonably believes to be covered under this Policy until a different allocation is negotiated or determined.

   13.3   Any negotiated or determined allocation of **Defense Costs** in connection with a **Claim** shall be applied retroactively, notwithstanding any allocation applied with respect to any prior advancement. Any allocation or advancement of **Defense Costs** in connection with a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss**.

14. **Other Insurance:** If any **Loss** arising from any **Claim** is insured by other valid and collectible insurance, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to this Policy's Policy Number.

15. **Discovery Period:**

   15.1   If the Insurer or the **Parent Organization** fails or refuses to renew this Policy or if the **Parent Organization** cancels this Policy, any **Insured** shall have the right to an extension of the coverage granted by this Policy for the duration of time set forth in Item V of the Declarations following the effective date of such cancellation or non-renewal. Such extension of coverage shall apply solely with respect to **Wrongful Acts** taking place before the effective date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium set forth in Item V of the Declarations, must be made within 30 days after the effective date of cancellation or non-renewal of



# Executive Advantage Policy

the Policy. Such Discovery Period Premium shall be deemed fully earned as of such date. This extension shall not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

15.2    The extension of coverage for the **Discovery Period** shall not in any way increase the Limit of Liability set forth in Item III of the Declarations.

16. **Acquisition of Parent Company** (Automatic Run-off):

16.1    In the event of a **Change in Control** during the **Policy Period**, coverage under this Policy shall continue until the end of the **Policy Period**, but only with respect to **Claims** for **Wrongful Acts** taking place prior to the effective date of such **Change in Control**. The entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**.

16.2    The **Parent Organization** shall give written notice of such **Change in Control** to the Insurer as soon as practicable, together with such information as the Insurer may reasonably require.

17. **Subrogation**: If the Insurer pays any **Loss** under this Policy, the Insurer shall be subrogated to the extent of such payment to all rights of recovery thereof, including without limitation an **Insured Person's** right to indemnification or advancement from the **Insured Organization**. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. The obligations of the **Insureds** pursuant to this Section 17 survive the termination of the **Policy Period**.

18. **Parent Organization as Authorized Representative**: The **Insureds** agree that the **Parent Organization** shall act on their behalf with respect to all matters under this Policy, including without limitation the giving and receiving of notices hereunder, the payment or return of premiums, and the negotiation and acceptance of endorsements.

19. **Amendment, Assignment and Headings**:

19.1    Any amendment to this Policy or assignment of an interest in this Policy, in whole or in part, shall be effective only if made by endorsement to this Policy signed by an authorized representative of the Insurer.

19.2    The headings to the provisions in this Policy, including those found in any endorsements attached hereto, are provided for convenience only and do not affect the construction hereof.

20. **Territory**: This Policy applies to **Claims** made anywhere in the world for **Wrongful Acts** occurring anywhere in the world.

21. **Spousal Benefit**: If a **Claim** against an **Insured Person** for a **Wrongful Act** otherwise covered under this Policy includes a claim against his/her legal spouse where the claimant asserts such claim by reason of spousal status or seeks to obtain recovery against property in which such spouse has an interest, the amount which such spouse becomes legally obligated to pay in respect of such **Claim** (including defense costs) shall be deemed the **Loss** of such **Insured Person**, subject to this Policy's terms, conditions, and exclusions. In any event, this extension shall not cover any conduct or wrongful act committed by such legal spouse.

22. **Estates and Legal Representatives**: In the event of the death, incapacity, or bankruptcy of an **Insured Person**, any **Claim** made against the estate, legal representatives, heirs, or the assigns of such **Insured Person** for a **Wrongful Act** by such **Insured Person** shall be deemed to be a **Claim** against such **Insured Person**.

23. **Termination**:

23.1    The Insurer may not cancel this Policy except for non-payment of premium when due. Such cancellation shall be effective as of the inception date of the **Policy Period**.

23.2    The **Parent Organization** may cancel this Policy by sending notice of cancellation to the Insurer. Such cancellation shall be effective on the date the Insurer receives such notice. The **Parent Organization** may

US/D&O 2000-POL



## Executive Advantage Policy

not cancel this Policy in anticipation of or after the effective date of a **Change in Control**. In the event the **Parent Organization** cancels this Policy, the Insurer shall retain the customary short rate premium. Payment of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

24. **Action Against Insurer:**

24.1    No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, or the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial, or by written agreement of the **Insureds**, the claimant and the Insurer.

24.2    No person or organization shall have the right under this Policy to join the Insurer as a party to any action against the **Insureds**, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives.

25. **Definitions:**

25.1    **"Application"** means all signed applications, including attachments and materials submitted therewith or as a part thereof, or incorporated therein, for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a direct or indirect renewal or replacement. All such applications, attachments, and materials are deemed attached to and incorporated into this Policy.

25.2    **"Change in Control"** means:

     (a)   the acquisition by another entity or person, or group of entities and/or persons acting in concert, of securities or voting rights resulting in ownership or voting control by such other entities and/or persons of more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors or equivalent positions of the **Parent Organization**; or

     (b)   the merger of the **Parent Organization** into another entity such that the **Parent Organization** is not the surviving entity, or the consolidation of the **Parent Organization** with another entity.

25.3    **"Claim"** means:

     (a)   a written demand for monetary or non-monetary relief against an **Insured Person** or, with respect to **Insuring Agreement 1.3**, against the **Insured Organization**;

     (b)   a civil or criminal judicial proceeding or arbitration against an **Insured Person** or, with respect to **Insuring Agreement 1.3**, against the **Insured Organization**;

     (c)   a formal administrative or regulatory proceeding against an **Insured Person**; or

     (d)   a formal criminal, administrative, or regulatory investigation against an **Insured Person**, including any appeal therefrom. A **Claim** will be deemed first made on the earliest date any **Insured** receives a written demand, complaint, indictment, notice of charges, or order of formal investigation in such **Claim**.

25.4    **"Defense Costs"** means reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense of a **Claim** and cost of attachment or similar bonds, but shall not include the wages, salaries, benefits or expenses of any directors, officers or employees of the **Insured Organization**.

25.5    **"Discovery Period"** means the period of time set forth in Item V of the Declarations.

25.6    **"Executive Officer"** means the president, chief executive officer, chief operating officer, chief financial officer, managing director, any executive vice president and any equivalent executive position of the **Insured Organization**.

US/D&O 2000-POL



# Executive Advantage Policy

25.7    "**Insolvency**" means the status of the **Insured Organization** as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage, or liquidate the **Insured Organization**, or the **Insured Organization** becoming an insolvent debtor-in-possession.

25.8    "**Insured(s)**" means the **Insured Persons** and, solely with respect to Insuring Agreements 1.2 and 1.3, the **Insured Organization**.

25.9    "**Insured Organization**" means any entity named in Item I of the Declarations and any **Subsidiary**, including any such entity operating as a debtor-in-possession.

25.10   "**Insured Person(s)**" means:

(a)  one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors or officers of the **Insured Organization**, or, with respect to a **Subsidiary** operating outside the United States, their functional equivalent, regardless of title; and

(b)  with respect to a **Securities Action** only, any other natural persons who were, now are, or shall hereafter be employees of the **Insured Organization**.

25.11   "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions, or causes.

25.12   "**Loss**" means sums which the **Insured Persons** or, with respect to **Insuring Agreement 1.3**, the **Insured Organization** are legally obligated to pay solely as a result of any **Claim** insured by this Policy, including **Defense Costs**, damages, judgments, settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award. **Loss** shall not include fines, penalties, taxes, dividends or distributions of profits or other assets of the **Insured Organization**, any amount allocated to uncovered loss pursuant to Section 13, amounts for which there is no legal recourse against the **Insureds**, or matters uninsurable pursuant to any applicable law.

With respect to any **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition of any securities issued by or assets owned by any natural person or entity is inadequate, excessive, or improper, **Loss** shall not include the portion of any judgment or settlement relating to the amount by which such price or consideration was changed or modified as a result of such **Claim**.

25.13   "**Outside Entity**" means:

(a)  any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Insured Organization**, and is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended; and

(b)  any other entity specifically stated as such in an endorsement to this Policy.

25.14   "**Outside Position**" means the position of director, officer, trustee, or other equivalent position held by an **Insured Person** in any **Outside Entity**, if service in such position is with the knowledge and express consent or at the express request of the **Insured Organization**.

25.15   "**Parent Organization**" means the **Insured Organization** first named in Item I of the Declarations.

25.16   "**Policy Period**" means the period from the inception date set forth in Item II of the Declarations to the expiration date set forth in Item II of the Declarations, or its earlier termination pursuant to Section 23.

US/D&O 2000-POL



Liberty
International
Underwriters

# Executive Advantage Policy

25.17    **"Pollutants"** means any substance exhibiting hazardous characteristics as is or may be identified on any list of hazardous substances issued by the United States Environmental Protection Agency, or any state, local, or foreign counterpart. This definition shall include, without limitation, any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste (including material to be recycled, reconditioned or reclaimed), and any electric, magnetic or electromagnetic field of any frequency, as well as any air emission, waste water, infectious medical waste, nuclear materials, or nuclear waste.

25.18    **"Securities Action"** means any **Claim** against the **Insured Persons** or, with respect to **Insuring Agreement 1.3**, against the **Insured Organization**, if such **Claim**:

     (a)   arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the **Insured Organization**, whether such purchase, sale, or offer involves a transaction with the **Insured Organization** or occurs in the open market;

     (b)   is brought by a securities holder of the **Insured Organization** other than an **Insured Person** based upon such securities holder's interest in such securities, whether directly or by class action; or

     (c)   is brought as a securities holder derivative action on behalf of the **Insured Organization.**

25.19    **"Subsidiary"** means any entity in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors or equivalent positions are owned, in any combination, by one or more **Insured Organizations** if such ownership occurs:

     (a)   prior to inception date of the **Policy Period**;

     (b)   after the inception date of the **Policy Period** and the assets of such entity do not exceed 20% of the total consolidated assets of the **Insured Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statement; or

     (c)   after the inception date of the **Policy Period** and the assets of such entity exceed 20% of the total consolidated assets of the **Insured Organization** as reflected in the **Parent Organization's** then most recent audited consolidated financial statement but only upon the condition that the **Parent Organization**:

         (i)   give written notice of such transaction to the Insurer within 90 days after the effective date of such transaction;

         (ii)   provide the Insurer with such information as the Insurer may require; and

         (iii)   pay any additional premium required by the Insurer.

25.20    **"Wrongful Act"** means:

     (a)   any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the **Insured Persons** in their capacities as such or in an **Outside Position**, or, with respect to **Insuring Agreement 1.3**, by the **Insured Organization**; or

     (b)   any matter claimed against the **Insured Persons** solely by reason of their status as **Insured Persons**.



# Executive Advantage Policy

In Witness Whereof, the Insurer has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Insurer.

_____
PRESIDENT
Christopher L. Peirce

_____
SECRETARY
Dexter R. Legg



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

#### PRIMARY FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form Number | Form Name | Endorsement No. |
|---|---|---|
| US/D&O 2000-DEC (ED. 05 06) | EXEC-AD General Declarations Page | |
| US/D&O2000-POL (ED. 05 06) | Executive Advantage Policy Form | |
| D&O 48 284 04 06 | Washington Endorsement | 1 |
| US / D&O.41 (ED 08 01) | Allow Notice of Circumstance or Wrongful Act During Discovery Period | 2 |
| D&O.8 (ED 01 00) | Amend Definition of Insured Person(s) | 3 |
| D&O.31 (ED 04 00) | Amend ERISA to "For" Wording | 4 |
| D&O.17 (ED 01 00) | Amend Severability to All Exclusions | 5 |
| US / D&O.55 (ED 04 01) | Delete "Solely" from Definition Of Wrongful Act | 6 |
| US / D&O.72 (ED 04 06) | Delete Subsection 10.3 - Retention Enhancements | 7 |
| D&O.117-ED-04/09 | Amend Pollution Exclusion | 8 |
| US / D&O.5 (ED 01 00) | Increase Auto-Subsidiary Asset Threshold | 9 |
| D&O.20 (ED 01 00) | Investigative Costs Coverage | 10 |
| D&O Endorsement Form US/D&O.33 (ED 01 00) | Outside Position Extension (Any Non-Profit) | 11 |
| D&O.1 (ED 01 00) | Prior Acts Exclusion | 12 |
| MAN.85 (04 06) | Amend Definition of Executive Officer | 13 |
| D&O.DC 137 (Ed. 09 09) | Spousal Domestic Partner Benefit | 14 |
| D&O.12 (ED 04 00) | Professional Liability Exclusion (Security Holder / Carve-Out) | 15 |
| D&O MAN 1 Ed. 1/15 | Amend Subrogation - "Final Adjudication" | 16 |

2



**Liberty**
International
Underwriters.

# Executive Advantage Policy

| | | |
|---|---|---|
| D&O MAN 2 Ed. 1/15 | Outside Position Extension - Double Excess Endorsement | 17 |
| D&O MAN 3 Ed. 1/15 | State Inconsistency Endorsement | 18 |
| D&O MAN 4 Ed. 1/15 | Amend Section 13.2 Allocation | 19 |
| D&O MAN 5 Ed. 1/15 | Amend Definition of "Securities Action" | 20 |
| D&O MAN 6 Ed. 1/15 | Amend Prior Notice | 21 |
| D&O MAN 7 Ed. 1/15 | Amend Severability of the Application Non-Rescindable Side A, B, C | 22 |
| D&O MAN 8 Ed. 1/15 | Amend Definition of Claim -Proceedings, Extradition, Wells Notice, Tolling of Statute | 23 |
| D&O MAN 9 Ed. 1/15 | Amend Prior Litigation Exclusion | 24 |
| D&O MAN 10 Ed. 1/15 | Amend Definition of Application | 25 |
| D&O MAN 11 Ed. 1/15 | Retention Erosion Through Side A Insurance | 26 |
| D&O MAN 12 Ed. 1/15 | Amend Exclusion 5.1 | 27 |
| D&O MAN 13 Ed. 1/15 | Insured Vs. Insured (To include Employee in Securities Action and an Exception for Creditors Commitee) | 28 |
| D&O MAN 14 Ed. 1/15 | Section 11/12/15 | 29 |
| D&O MAN 15 Ed. 1/15 | Merger or Acquisition Claim Retention Endorsement | 30 |
| | | 31 |
| EXEC-AD 2000-108 ED.05 06 | Employment Practice Liability Endorsement (Non-Entity) | 32 |
| D&O Endorsement Form US/D&O.56 (ED 03/06) | Notice to CFO, GC, or HR Mgr. | 33 |
| TRIA-N004-0208 | Disclosure - Terrorism Risk Insurance Act | 34 |
| TRIA-E002-0208 | Cap on Losses From Certified Acts of Terrorism | 35 |
| OFAC 08/09 | U.S. Economic and Trade Sanctions Endorsement | 36 |



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 1

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WASHINGTON ENDORSEMENT

As used in this Policy endorsement the terms "the Insurer", "we", "our " and "us" refer to Liberty Insurance Underwriters Inc. The term "Named Insured", "you" and "your" refer to the "Parent Organization" or "Named Real Estate Investment Trust" as shown on the Declarations Page of this Policy.

Irrespective of any other term or condition within the Policy, the Policy is hereby amended by the following:

**A.   Cancellation**

We may cancel this Policy only for non-payment of premium by mailing to the Named Insured written notice of cancellation at least 10 days prior to the effective date of the cancellation.

We will mail notices of cancellation to the Named Insured at the mailing address we have on record.

You may cancel this Policy by mailing notice to us stating when the cancellation will be effective. You may not, however, cancel this Policy in anticipation of, or after the effective date of, a **Change In Control**.

**B.   Non-renewal**

If we decide not to renew this Policy, we will mail you notice of this decision at least 45 days before the Policy expires.

All other exclusions, conditions and limitations remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 2

| Effective Date: | January 2, 2015 |
| --- | --- |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ALLOW NOTICE OF CIRCUMSTANCE
### OR WRONGFUL ACT DURING DISCOVERY PERIOD

It is agreed that Section 8. (Notice of Circumstances or Wrongful Act), is deleted in its entirety and replaced with the following:

8.      Notice of Circumstance or Wrongful Act: If during the Policy Period or Discovery Period the Insureds become aware of any circumstance or Wrongful Act that reasonably may be expected to give rise to a Claim, and if such circumstance or Wrongful Act is reported to the Insurer during the Policy Period or Discovery Period in writing with details as to the nature and date of such circumstance or Wrongful Act, the identity of any potential claimant, the identity of any Insured Person involved in such circumstance or Wrongful Act, and the manner in which the Insureds first became aware of such circumstance or Wrongful Act, then any Claim subsequently arising from such circumstance or Wrongful Act shall be deemed under this Policy to be a Claim made during the Policy Period in which the circumstance or Wrongful Act was first duly reported to the Insurer.

Any circumstances or Wrongful Acts reported during the Discovery Period shall be subject to the limitations set forth in Section 15.

All other terms, conditions, and exclusions of this Policy remain unchanged.

US / D&O.41 (ED 08 01)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 3

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF INSURED PERSON(S)**

It is agreed that the definition of "**Insured Person(s)**", as set forth in Section **25.10**, is amended to include the following:

Debtor-in -possession
Risk Manager
Member

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O.8 (ED 01 00)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 4

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND ERISA TO "FOR" WORDING**

It is agreed that Section **5. (Exclusions), Exclusion 5.4** is deleted in its entirety and replaced with the following:

5.4     for an actual or alleged violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar federal, state, local or common law;

All other term, conditions, and exclusions of this Policy remain unchanged.

D&O.31 (ED 04 06)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 5

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

#### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### AMEND SEVERABILITY TO ALL EXCLUSIONS

It is agreed that the last paragraph of Section 5. (Exclusions) is deleted in its entirety and replaced with the following:

For purposes of determining the applicability of Sections 5.1 through 5.12, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** of a director of the **Insured Organization** or **Executive Officer** shall be imputed to the **Insured Organization**.

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O.17 (ED 01 00)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 6

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### DELETE "SOLELY" FROM DEFINITION OF WRONGFUL ACT

It is agreed that Section **25. (Definitions)**, 25.20 "Wrongful Act" is deleted in its entirety and replaced with the following:

25.20    **"Wrongful Act"** means:

(a)   any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the **Insured Persons** in their capacities as such or in an **Outside Position**, or, with respect to **Insuring Agreement 1.3**, by the **Insured Organization**; or

(b)   any matter claimed against the **Insured Persons** by reason of their status as **Insured Persons**.

All other terms, conditions, and exclusions of this Policy remain unchanged.

1

US / D&O.55 (ED 04 01)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 7

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### DELETE SUBSECTION 10.3 - RETENTION ENHANCEMENTS

It is hereby understood and agreed that subsection 10.3 of Section 10. (Retentions) is deleted in its entirety.

All other terms, conditions and exclusions of this Policy remain unchanged.

1

US / D&O.72 (ED 04 06)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 8

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND POLLUTION EXCLUSION**

It is agreed that Exclusion **5.7** is amended to read as follows:

5.7    for any actual, alleged, or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants**; provided that this exclusion shall not apply to any **Claim** brought by a securities holder of the **Insured Organization** based on such securities holder's interest in such securities who is not an **Insured Person** and who is acting totally independently of, and totally without the solicitation, assistance or participation of any **Insured Person** or any **Insured Organization**;

provided, however, this exclusion does not apply to:

(a)    any **Loss** for which the **Company** (i) is neither permitted nor required by common or statutory law to indemnify the **Insured Person**, or (ii) fails or refuses for reason of **Financial Impairment** to indemnify the **Insured Person**.

All other terms, conditions, and exclusions of this Policy remain unchanged.

1    1

D&O.117-ED-04/09



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 9

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INCREASE AUTO-SUBSIDIARY ASSET THRESHOLD**

It is agreed that Sections **25.19(b)** and **25.19(c)** (**"Subsidiary"**) shall be amended such that "20%" shall be changed to "**30%**".

All other terms, conditions, and exclusions of this Policy remain unchanged.

1

US / D&O.5 (ED 01 00)



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 10

| | |
|---|---|
| **Effective Date:** | January 2, 2014 |
| **Policy Number:** | DONYAAXOGP001 |
| **Issued To:** | Biozone Formally Cocrystal Discovery, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### INVESTIGATIVE COSTS COVERAGE

It is agreed that:

I.  Section **1. (Insuring Agreements)** shall be amended to include the following:

     **1.4**     Investigative Costs Coverage: The Insurer shall pay on behalf of the **Insured Organization** all **Investigative Costs** which the **Insured Organization** shall become legally obligated to pay as a result of a **Shareholder Derivative Demand** first made during the **Policy Period** or **Discovery Period**, if applicable, on the **Insured Organization** for a **Wrongful Act** of an **Insured Person** which takes place during or prior to the **Policy Period**.

II.  The Insurer's maximum liability for all **Investigative Costs** covered under the Insuring Agreement set forth in Item I above on account of all **Shareholder Derivative Demands** first made during the **Policy Period** or **Discovery Period**, if applicable, is $250,000.   This is a sub-limit, which is part of and not in addition to the Limit of Liability set forth in **Item III** of the Declarations.

III.  No Retention shall apply to **Investigative Costs** covered under the Insuring Agreement set forth in Item I above.  This provision shall not affect the applicability of the Retention to all other **Loss** covered under the Policy.

IV.  Section **25. (Definitions)** is amended to include the following:

 "**Investigative Costs**" means reasonable costs, charges, fees (including attorneys' and experts' fees) and expenses incurred by the **Insured Organization**, its board of directors or any committee thereof in connection with the investigation or evaluation of any **Shareholder Derivative Demand**, but shall not include the wages, salaries, benefits, expenses or fees of the directors, officers or employees of the Company.

 Any limitation to coverage for **Loss** under the Policy shall also apply to **Investigative Costs**.

 "**Shareholder Derivative Demand**" means any written demand by one or more shareholders of the **Insured Organization** upon the board of directors of the **Company** to bring a proceeding in a court of law against any **Insured Person** for a **Wrongful Act** of such **Insured Person** taking place before or during the **Policy Period**.

| **1** | 2 |
|---|---|

D&O.20 (ED 01 00)



## Executive Advantage Policy

V.      Solely with respect to the Investigative Costs coverage granted by this endorsement, the definitions of the following terms are amended as follows:

      25.3    "Claim" means Shareholder Derivative Demand.

      25.12   "Loss" means Investigative Costs.

All other terms, conditions, and exclusions of this Policy remain unchanged.



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 11

| | |
|---|---|
| Effective Date: | January 2, 2014 |
| Policy Number: | DONYAAXOGP001 |
| Issued To: | Biozone Formally Cocrystal Discovery, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### OUTSIDE POSITION EXTENSION (ANY NON-PROFIT)

It is agreed that Section **25.13(a) (Outside Entity)** shall be deleted and replaced with the following:

    **(a)**  any non-profit entity; and

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O Endorsement Form US/D&O.33 (ED 01 00)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 12

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PRIOR ACTS EXCLUSION

It is agreed that Section 5. (Exclusions) is amended to include the following:

5.11    for, based upon, arising from, or in any way related to any **Wrongful Act** taking place in whole or in part prior to December 27, 2013.

All other terms, conditions, and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 13

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF EXECUTIVE OFFICER**

It is agreed that Section **25. (Definitions)**, 25.6 **"Executive Officer"** is deleted in its entirety and replaced with the following:

25.6    **"Executive Officer"** means the Chief Executive Officer, or any equivalent executive position of the **Insured Organization**.

All other terms, conditions, and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 14

| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SPOUSAL DOMESTIC PARTNER BENEFIT

It is agreed that Section **21. Spousal Benefit** shall be deleted and replaced with the following:

**Spousal Domestic Partner Benefit:**  If a **Claim** against an **Insured Person** for a **Wrongful Act** otherwise covered under this Policy includes a claim against his/her legal spouse or domestic partner where the claimant asserts such claim by reason of their spousal or domestic partner status or seeks to obtain recovery against property in which such spouse or domestic partner has an interest, the amount which such spouse or domestic partner becomes legally obligated to pay in respect of such **Claim** (including defense costs) shall be deemed the **Loss** of such **Insured Person**, subject to this Policy's terms, conditions, and exclusions.  In any event, this extension shall not cover any conduct or wrongful act committed by such legal spouse or domestic partner. For purposes of this Endorsement, a legal spouse shall include a person of the same sex if such person is legally recognized as such under federal law or state law, or under the laws of the District of Columbia.

All other terms, conditions, and exclusions of this Policy remain unchanged.

| 1 | 1 |

D&O.137 (Ed. 09/09)



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 15

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PROFESSIONAL LIABILITY EXCLUSION
### (SECURITY HOLDER CARVE-OUT)

It is agreed that Section 5. (**Exclusions**) is amended to include the following:

5.12    based upon, arising from, or in any way related to the rendering of or failure to render professional services of any kind or nature to or on behalf of any customer or client of the **Insured Organization** in connection with the **Insured Organization's** business.

This exclusion shall not apply to any **Claim** brought or maintained by or on behalf of a security holder(s) of the **Insured Organization** other than an **Insured Person**, whether directly, by class action, or by derivative action, where such **Claim** is based upon the failure of an **Insured Person** to properly supervise or manage such professional services, or based upon improper disclosure or nondisclosure of material information relating to such professional services.

All other terms, conditions, and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 16

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND SUBROGATION - "FINAL ADJUDICATION"**

17.     SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all of each and every **Organizations and Insured** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the Insurer effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the Insurer exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final adjudication establishes that such deliberate fraudulent act was committed; or has obtained any profit or advantage to which a final adjudication establishes the **Insured** was not legally entitled.

All other term, conditions, and exclusions of this Policy remain unchanged.

1

D&O MAN 1 Ed. 1/15



**Executive Advantage Policy**

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 17

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### OUTSIDE POSITION EXTENSION - DOUBLE EXCESS ENDORSEMENT

It is agreed that the following sections of the Policy shall be deleted and replaced with the following:

2. **Outside Position Liability:**

    2.1    This Policy, subject to its terms, conditions, and exclusions, covers any **Insured Person** serving in an **Outside Position.** Such coverage shall be specifically excess to any: (i) indemnification provided by the **Outside Entity** in which the **Insured Person** serves in such **Outside Position**; (ii) insurance available from or provided by such **Outside Entity**, regardless of whether or not such other insurance policy is written specifically excess of this Policy or refers to this Policy's policy number.

         It is understood and agreed that coverage as is afforded by virtue of this endorsement shall not apply to any claim or claims for any alleged Wrongful Act: (i) occurring at any time when the Insured was not sitting as a director of the for-profit organization at the request or direction of the Company, or (ii) for any Wrongful Act as of the effective date of this policy, (or in the case of a newly appointed or elected director as of the appointment or election date for such insured), the Insured(s), as of such date, knew or could have reasonably foreseen that such Wrongful Act could lead to a claim.

    2.2    Payment by the Insurer or any member company of the Liberty Mutual Group under another insurance policy as a result of a **Claim** against an **Insured Person** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Policy.

    2.3    Coverage under this Section 2 shall not apply to any **Claim** that is brought or maintained with the solicitation, assistance or participation of the **Outside Entity** in which an **Insured Person** serves in an **Outside Position** or any director, officer, trustee, regent, governor or employee of such **Outside Entity**.

    2.4    Nothing in this Section 2 shall be construed to extend coverage under this Policy to the **Outside Entity** in which such **Insured Person** serves in such **Outside Position**, or to the other directors, officers, or employees of such **Outside Entity**.

    25.13    **"Outside Entity"** means:



# Executive Advantage Policy

(a)   any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Insured Organization**, and is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended; and

25.14   **"Outside Position"** means the position of director, officer, trustee, or other equivalent position held by an **Insured Person** in any **Outside Entity**, if service in such position is at the express request or direction of the **Insured Organization**.

In the event of a disagreement between the **Insured Organization** as to whether such Insured was acting "at the request or direction" of the **Insured Organization**, it is hereby understood and agreed that this endorsement shall abide by the determination of the **Insured Organization** on this issue and such determination shall be made by the **Insured Organization** by written notice to the Insurer within 90 days after the claim is first made against the Insured.  In the event no determination is made within such period, this endorsement shall operate as if the **Insured Organization** determined that the Insured was not acting at the **Insured Organization** request.

All other terms, conditions, and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 18

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### STATE INCONSISTENCY ENDORSEMENT

In consideration of the premium charged for this Policy, it is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this policy, and any other term or condition of this Policy, then where permitted by law, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the Policy which are more favorable to the **Named Insured**.

All other terms and conditions of the Policy remain unchanged.

1

D&O MAN 3 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 19

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND SECTION 13.2 ALLOCATION**

It is agreed that Section **13. ALLOCATION** shall be deleted and replaced with the following:

13.1   If a **Claim** gives rise to **Loss** covered under this Policy and loss not covered under this Policy, either because a **Claim** includes both covered and uncovered matters or both covered and uncovered parties, the **Insureds** and the Insurer shall use their best efforts to allocate such amount between covered **Loss** and uncovered loss.

13.2   If there can be no agreement between the Insurer and the **Insured** as to the amount of **Defense Costs** to be advanced in connection with such **Claim**, the Insurer shall advance **Defense Costs** which it reasonably believes to be covered under this Policy until a different allocation is negotiated or determined.

13.3   Any negotiated or determined allocation of **Defense Costs** in connection with a **Claim** shall be applied retroactively, notwithstanding any allocation applied with respect to any prior advancement.  Any allocation or advancement of **Defense Costs** in connection with a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss**.

All other terms and conditions of the Policy remain unchanged.

1

D&O MAN 4 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 20

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF "SECURITIES ACTION"**

It is agreed that Section **25.18** is amended to read as follows:

25.18    **"Securities Action"** means any **Claim**, under federal, state, or common law, against the **Insured Person(s)** or, with respect to Insuring Agreement 1.3, against **Insured Organization**, if such **Claim**:

(a)    Arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the **Insured Organization**, whether such purchase, sale, or offer involves a transaction with the **Insured Organization** or occurs in the open market;

(b)    is brought by a securities holder of the **Insured Organization** other than a natural person who was, now is, or shall hereafter be a duly elected or appointed director or officer of the **Insured Organization**, based upon such securities holder's interest in such securities, whether directly or by class action; or

(c)    is brought as a securities holder derivative action on behalf of the **Insured Organization**.

All other terms, conditions and exclusions of this Policy remain unchanged.

1 | 1

D&O MAN 5 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 21

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND PRIOR NOTICE**

In consideration of the premium charged, it is hereby understood and agreed that Section 5.3 is deleted and replaced with the following:

5.3      based upon, arising from, or in any way related to any error, misstatement, misleading statement, act omission, neglect or breach of duty which has been reported or has been the subject of any notice under any Directors and Officers Liability, Employment Practices Liability, or similar insurance policy of which this Policy is a renewal or replacement or under any other such policies which it may succeed in time;

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O MAN 6 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 22

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND SEVERABILITY OF THE APPLICATION NON-RESCINDABLE SIDE A, B, C**

In consideration of the premium charged, it is hereby understood and agreed that Section 6. is deleted in its entirety and is amended to read as follows:

6.  **Application Representations and Severability:**

   6.1  The **Insureds** represent that the statements and representations contained in the **Application** are true. This Policy is issued in reliance upon the truth of such statements and representations.

   6.2  The **Insureds** agree that if the **Application** contains any material statements or material representations that are untrue with the intent to deceive, this Policy shall be void as to:

     (a)  any **Insured Person** who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other **Insured Person**. This provision shall also apply to the **Insured Organization** under Insuring Agreement 1.2 to the extent it indemnifies such **Insured Person**;

     (b)  the **Insured Organization** under Insuring Agreement 1.3, if Chief Executive Officer or Chief Financial Officer knew that the facts were not truthfully disclosed;

     whether or not such **Insured Person**, Chief Executive Officer or Chief Financial Officer knew of such untruthful disclosure in the **Application**. The **Application** for coverage is a separate **Application** for each **Insured Person**.

     It is further agreed that solely with respect to Insuring Agreement 1.1 ( **Insured Persons Liability** ), Insuring Agreement 1.2 ( **Insured Organization** Reimbursement ), Insuring Agreement 1.3 (Securities Action Liability ) this Policy shall not be rescinded by the Insurer in whole or in part for any reason; provided, however, if the **Insured Organization** is permitted or required by law to indemnify an **Insured Person** who knew the facts that were not truthfully disclosed, or to advance Defense Costs on behalf of such **Insured Person** , and does not in fact do so other than for reasons of Insolvency , then this Policy shall be void as to such **Insured Person** under Insuring Agreement 1.1.

All other terms, conditions, and exclusions of this **Policy** remain unchanged.

| 1 | 1 |
|---|---|

D&O MAN 8 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 23

| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF CLAIM -PROCEEDINGS, EXTRADITION, WELLS NOTICE, TOLLING OF STATUTE**

It is hereby understood and agreed that the policy is amended as follows:

25. Definitions, 25.3 "Claim" is deleted in its entirety and replaced with the following:

25.3  "Claim" means:

(a)   a written demand for monetary or non-monetary relief or a request to toll any statute of limitations against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(b)   the commencement of a civil or criminal judicial proceeding or arbitration against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(c)   the commencement of a formal administrative or regulatory proceeding against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(d)   the commencement of a formal criminal, administrative, or regulatory investigation against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**;

(e)   the receipt by an **Insured Person** of a Wells Notice from the SEC;

(f)   an official request for **Extradition** of any **Insured Person**; or

(g)   the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**;

including any appeal therefrom.  A **Claim** will be deemed first made on the earliest date any **Insured Person** is arrested by a foreign policing authority or receives a written demand, complaint, indictment, notice of charges, or order of formal investigation in such **Claim**.

25. Definitions, 25.4 "Defense Costs" is amended to include the following:

"Defense Costs" also means also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the Insurer resulting from an **Insured Person** lawfully:

(a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or

1

D&O MAN 8 Ed. 1/15



## Executive Advantage Policy

(b) appealing any order or other grant of **Extradition** of that **Insured Person**.

25. Definitions, 25.21 "**Extradition**" is added as follows:

25.21 "**Extradition**" means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms, conditions, and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 24

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### AMEND PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that 5. Exclusions, 5.5 is amended to read as follows:

5.5　　based upon, arising from, or in any way related to:

    (a)　any suit against any **Insured** which has been made, which existed, or was pending prior to the applicable Prior Litigation Date set forth in Item VI of the Declarations; or

    (b)　the same or substantially the same facts, circumstances or allegations involved in such suit or other proceeding;

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O MAN 9 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 25

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### AMEND DEFINITION OF APPLICATION

Definition **25.1, "Application"** is deleted in its entirety and replaced with the following:

> **"Application"** means all signed applications, including attachments as a part thereof, or incorporated therein, for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a direct or indirect renewal or replacement; and any public documents filed by the **Organization** within the past twelve (12) months (prior to the inception date of the Policy), with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC). All such applications and attachments are deemed attached to and incorporated into this Policy.

All other terms and conditions of the Policy remain unchanged.

D&O MAN 10 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 26

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**RETENTION EROSION THROUGH SIDE A INSURANCE**

In consideration of the premium charged, it is hereby understood and agreed that **10. Retentions**, is amended in part to read as follows:

**10.1**   The Insurer shall be liable to pay only the amount of covered **Loss** in excess of the applicable Retention amount set forth in Item IV of the Declarations.  Such applicable Retention shall be uninsured and shall be borne by the **Insured Organization.**  Notwithstanding the above, payments by a Side A DIC insurer shall be applied towards the satisfaction of the **Retention**; prior to any such payment, the **Insured** shall provide the Insurer with written proof to the Insurer's satisfaction concerning the terms of such payment.

All other terms, conditions and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 27

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMEND EXCLUSION 5.1

In consideration of the premium charged, it is hereby understood and agreed that **5. Exclusions, 5.1** is deleted and replaced with the following:

Exclusion **5.1** of the Policy is deleted in its entirety and replaced with the following:

**5.1**   for bodily injury, sickness, disease, death, emotional distress, mental anguish, false arrest or imprisonment, abuse of process, malicious prosecution, libel, slander, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction, or for damage to, destruction of, or loss of use of any tangible property; provided that this exclusion shall not apply to any **Claim** brought by a securities holder of the **Insured Organization** based on such securities holder's interest in such securities who is not an **Insured Person** and who is acting totally independently of, and totally without the solicitation, assistance or participation of any **Insured Person** or any **Insured Organization**;

All other terms and conditions of the Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 28

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### INSURED VS. INSURED (TO INCLUDE EMPLOYEE IN SECURITIES ACTION AND AN EXCEPTION FOR CREDITORS COMMITEE)

In consideration of the premium charged, it is hereby understood and agreed that **5. Exclusions, 5.6** is deleted and replaced with the following :

5.6  brought or maintained by or on behalf of the **Insured Organization** or any Insured Person, in any capacity, except:

   (a)  a **Claim** that is a derivative action brought or maintained on behalf of the **Insured Organization** by one or more shareholders of the **Insured Organization** who are not **Insured Person(s)** and who bring or maintain the action without the solicitation, assistance or active participation of any **Insured Person(s)**;

   (b)  a **Claim** by an **Insured Person(s)** for the actual or alleged harassment of, wrongful termination of, or discrimination including, but not limited to any manner of discrimination in violation of 18 U.S.C. 1514A of the Sarbanes Oxley legislation, against such **Insured Person(s)**;

   (c)  a **Claim** in the form of a cross-claim, third-party claim, or otherwise for contribution or indemnity, if such **Claim** directly results from another **Claim** that otherwise is covered under this Policy;

   (d)  in the event of the **Insured Organization's** bankruptcy pursuant to the United States Bankruptcy Code, a **Claim** by an examiner, trustee or other legal representative, including a Creditors Committee, of the **Insured Organization** who is duly appointed by a Bankruptcy Court;

   (e)  a **Securities Action** brought or maintained by, or on behalf of, or with the solicitation, assistance or active participation of one or more **Insured Person(s)** as defined in Section 25.10(b), other than an **Insured Person(s)** of the **Organization** as defined in Section 25.10(a), if the only involvement, solicitation, assistance or participation by all such **Insured Person(s)** is protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 or any similar whistleblower statute;

   (f)  a **Claim** by an **Insured Person** who is a duly elected or appointed director or officer of a **Subsidiary** operating outside of the United States against such **Subsidiary** or any director or officer thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

1   2

D&O MAN 13 Ed. 1/15



# Executive Advantage Policy

Manuscript 14

    (g)    a Claim brought by an **Insured Person** for **Wrongful Acts** occurring at least (2) years after termination of said **Insured Person's** employment with **Insured Organization**; or

    (h)    a **Securities Action** brought by a securities holder who is also an employee of the Insured, provided that such securities holder did not actively solicit, assist or participate in this bringing or maintenance of such **Securities Action**

All other terms, conditions, and exclusions of this policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 29

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### SECTION 11/12/15

It is agreed that the definition of "Loss", as set forth in Section 25.12, shall be deleted and replaced with the following:

"Loss" means sums which the **Insured Person**(s) or, with respect to Insuring Agreement 1.3, the **Insured Organization** are legally obligated to pay solely as a result of any **Claim** insured by the **Policy**, including **Defense Costs**, damages, judgments, (including pre and post judgment interest), settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award. Loss shall not include fines, penalties, taxes, dividends or distributions of profits or other assets of the **Insured Organization**, any amount allocated to uncovered loss pursuant to Section 13, amounts for which there is no legal recourse against the Insureds, or matters uninsurable pursuant to any applicable law, including but not limited to damages or settlements which are in the nature of restitution, disgorgement or the return of ill-gotten gains, except as otherwise provided in the paragraph below.

Notwithstanding the foregoing paragraph, with respect to a **Claim** against any **Insured Person**(s), the **Insurer** shall not assert that the portion of any settlement in a Securities Action arising out of an Initial Public Offering or subsequent public offering of securities issued by the Insured Organization constitutes uninsurable loss due to alleged violations of Sections 11, 12 or 15 of the Securities Act of 1933 as amended, or any similar state, local or common law.

With respect to any **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition of any securities issued by or assets owned by any natural person or entity is inadequate, excessive, or improper, Loss shall not include the portion of any judgment or settlement relating to the amount by which such price consideration was changed or modified as a result of such Claim.

With respect to the insurability of punitive or exemplary damages, if the **Insured Organization** determines in good faith that such damages are insurable under applicable law, the Insurer will not raise as a defense to coverage the insurability of such damages. However, in the event of a challenge to such a determination by any other person or entity, the **Insurer** shall be obligated to reimburse such damages only if a court of competent jurisdiction specifically determines that such damages are insurable.

It is further agreed that Section 5. Exclusions is amended as follows:

Exclusion 5.9 is deleted and replaced with the following:



**Executive Advantage Policy**

5.9  based upon, arising from, or in any way related to any Insureds gaining any personal profit, remuneration or advantage to which they were not legally entitled, if a final, non appealable adjudication adverse to an Insured in the underlying action establishes that such Insured(s) gained such personal profit, remuneration or advantage.

However, this exclusion shall not apply to:

(a)  coverage provided under Insuring Agreement 1.2; or

(b)  any Securities Action involving claims asserted against Insured Persons under Sections 11, 12 or 15 of the Securities Act of 1933 as amended or any similar state local or common law arising out of an Initial Public Offering or subsequent public offering of securities issued by the Insured Organization.

All other terms, conditions, and exclusions of this Policy remain unchanged.



**Liberty**
International
Underwriters®

## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 30

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MERGER OR ACQUISITION CLAIM RETENTION ENDORSEMENT**

In consideration of the premium paid for the Policy, it is understood and agreed that:

Section 25 of the Policy, Definitions, is amended to include:

> **Merger or Acquisition Claim** means any **Claim** against an **Insured** arising from any actual or proposed merger, acquisition or consolidation to which an **Insured Organization** is an actual or potential party.

> Solely with respect to any **Merger or Acquisition Claim** made against any **Insured** for any **Wrongful Acts**, the Insurer shall only be liable for covered **Loss** (including **Defense Costs**) in excess of the **Retention** indicated below.

> The Retention shall be borne by the **Insured Organization** with respect to all **Loss** (including **Defense Costs**) provided that such Retention shall not apply under Insuring Agreement 1.1 of the Policy.

Section IV of the Declarations, **Retentions**, is amended as follows:

**ITEM IV.      RETENTIONS:**

| | |
|---|---|
| Insuring Agreement 1.1 | <u>$0</u> |
| Insuring Agreement 1.2 | <u>$500,000</u> in the aggregate each **Merger or Acquisition Claim** |
| Insuring Agreement 1.3 | <u>$500,000</u> in the aggregate each **Securities Action** and **Merger or Acquisition Claim** |

All other terms, conditions, and exclusions of this Policy remain unchanged.

1    1

D&O MAN 15 Ed. 1/15



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 31

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### EMPLOYMENT PRACTICE LIABILITY ENDORSEMENT
### (NON-ENTITY)

It is agreed that coverage as is afforded by this Policy is extended to an **Employment Practice Action** against an **Insured Person,** as hereinafter defined, subject to all terms, conditions and exclusions of this Endorsement and the other terms, conditions and exclusions of this Policy.

For the purposes of this Endorsement, the following definitions shall apply:

(1)     "**Employment Practice Action**" shall mean any **Claim** for or arising out of any **Employment Practice Wrongful Act.**

(2)     "**Employment Practices Wrongful Act**" shall mean any actual or alleged wrongful dismissal, discharge or termination (either actual or constructive) of employment, sexual harassment of an employee, unlawful employment discrimination, wrongful failure to hire or promote, or failure to grant tenure.

(3)     "**Insured Person**" shall mean, solely with respect to an **Employment Practice Action** and this endorsement, any director, officer or employee of the **Insured Organization** whether such individual is in a supervisory, co-worker or subordinate position or otherwise.  Coverage shall automatically apply to all new employees hired after the inception date of this Policy.

Solely with respect to an **Employment Practice Action,** the term "**Employment Practice Wrongful Act**" is substituted for the term "**Wrongful Act**" wherever it appears in this Policy.

Solely with respect to a **Claim** for an **Employment Practice Wrongful Act,** Section 5. Exclusions shall be amended as follows:

(1)     Exclusion 5.1 shall be deleted in its entirety and replaced with the following:

      5.1     for bodily injury, sickness, disease, death, false imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for damage to or destruction of any tangible property, including the loss of use thereof;

(2)     Exclusion 5.6(b) shall be deleted and replaced with the following:

      (b)     a **Claim** for an **Employment Practice Wrongful Act**;

(3)     Exclusion 5.10 shall be deleted and replaced with the following:

EXEC-AD 2000-108 ED.05 06



# Executive Advantage Policy

5.10   for, based upon, arising from, or in any way related to an **Employment Practices Wrongful Act** committed by an **Insured Person** with the intent to cause the harm alleged to have resulted from such **Employment Practices Wrongful Act**.

However, the Insurer will advance **Defense Costs** in connection with such **Claim** on behalf of such **Insureds** until such time as it has established in fact that such **Insureds** intentionally caused such harm.

It is further agreed solely with respect to any additional coverage granted by virtue of this Endorsement:

(1)   The Insurer shall not be liable to make any payment for **Loss** in connection with any **Employment Practice Action** made against an **Insured Person** for, based upon, arising from, or in any way related to any actual or alleged **Employment Practice Wrongful Act** taking place prior to December 27, 2013 if any **Insured Person(s)**, as of such date, knew or could have reasonably foreseen that such **Employment Practice Wrongful Act** could lead to an **Employment Practice Action**.

(2)   For purposes of the coverage granted by this endorsement, Item VI. of the Declarations is amended to read in its entirety as follows:

PRIOR LITIGATION DATES:
Insuring Agreements 1.1 and 1.2  December 27, 2013

All other terms, conditions, and exclusions of this Policy remain unchanged.

EXEC-AD 2000-108 ED.05 06



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 32

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

#### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### NOTICE TO CFO, GC OR HR MGR.

In consideration of the premium charged, it is hereby understood and agreed that **7. Reporting Requirements**, is amended in part to read as follows:

7.1     The **Insureds**, as a condition precedent to their rights under this Policy, shall report **every Claim** to the Insurer as soon as practicable but in no event later than the 60 days after the Chief Financial Officer, General Counsel, Human Resources Manager, or functional equivalent, becomes aware of such **Claim** but in no event later than the end of the **Policy Period** or **Discovery Period**, if applicable.

All other terms, conditions and exclusions of this Policy remain unchanged.

D&O Endorsement Form US/D&O.56 (ED 03 06)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 33

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### DISCLOSURE – TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments, ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown in the Declarations, Declarations Extension Schedule or elsewhere by endorsement in your policy.

**Federal Participation In Payment Of Terrorism Losses**

If an individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 34

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the above captioned policy.

**A.   Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.    The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.   Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

| 1 | 1 |
|---|---|



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 35

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | CoCrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**U.S. ECONOMIC AND TRADE SANCTIONS ENDORSEMENT**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.



**Executive Advantage Policy**

## LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 36

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMEND SUBROGATION - FINAL NON-APPEALABLE ADJUDICATION ENDORSEMENT

17.   SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all of each and every **Organization and Insured** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the Insurer effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the Insurer exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final non-appealable adjudication establishes that such deliberate fraudulent act was committed; or has obtained any profit or advantage to which a final non-appealable adjudication establishes the **Insured** was not legally entitled.

All other term, conditions, and exclusions of this Policy remain unchanged.



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 37

| | |
|---|---|
| Effective Date: | January 2, 2015 |
| Policy Number: | DONYAAXOGP002 |
| Issued To: | Cocrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND SEVERABILITY FOR EXCLUSIONS ENDORSEMENT**

It is agreed that the last paragraph of Section 5. (Exclusions) is deleted and replaced with the following:

For purposes of determining the applicability of Sections 5.1 through 5.10, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** of the **Chief Executive Officer** or **Chief Financial Officer** shall be imputed to the **Insured Organization**.

All other terms, conditions, and exclusions of this Policy remain unchanged.

1

ML MAN 2 Ed 01/15

## Executive Advantage Policy



## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 38

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ENTITY VS INSURED ENDORSEMENT

Section 5. Exclusions 5.6 is deleted in its entirety and replaced with the following:

brought or maintained by or on behalf of the **Insured Organization** or **Outside Entity** against an **Insured Person** or any other **Insured Organization**, except:

a.  a **Claim** that is a derivative action brought or maintained on behalf of the **Insured Organization** by one or more shareholders of the **Insured Organization** who are not **Insured Persons** and who bring or maintain the action without the solicitation, assistance or participation of any **Insured Person**;

b.  a **Claim** arising from the  **Insolvency** of the **Insured Organization**;

All other terms, conditions, and exclusions of this Policy remain unchanged.

ML MAN 3 Ed 01/15



## Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 39

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF LOSS TO INCLUDE SOX 304 COSTS ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that:

1. Section 25. Definitions, 25.12 "Loss" is amended to include the following:

   **Loss** also includes **SOX 304 Costs**, provided they arise out of a **Claim** duly made and reported to the Insurer during the Policy Period.

2. For the purposes of this endorsement, the following definition(s) shall apply:

   **"SOX 304 Costs"** means reasonable fees, costs and expenses consented to by the Insurer (including premiums or origination fees for any loan or bond) and incurred by the **Insured** solely to facilitate the return of amounts required to be repaid by such chief executive officer or chief financial officer pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002; provided, however, **SOX 304 Costs** do not include any amounts requested or required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, and in no event shall the Insurer be liable for the payment, return, reimbursement, disgorgement or restitution of any such amounts.

All other terms, conditions and exclusions of this Policy remain unchanged.

**Executive Advantage Policy**



## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 40

| | |
|---|---|
| **Effective Date:** | January 2, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF LOSS TO INCLUDE DODD FRANK 954 COSTS ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that:

1. **Section 25. Definitions, 25.12 "Loss"** is amended to include the following:

   **Loss** also includes **Dodd Frank 954 Costs**, provided they arise out of a **Claim** duly made and reported to the Insurer during the Policy Period.

2. For the purposes of this endorsement, the following definition(s) shall apply:

   **"Dodd-Frank 954 Costs"** means the reasonable and necessary fees, costs and expenses consented to by the Insurer (including the premium or origination fee for a loan or bond) and incurred by an **Executive Officer** solely to facilitate the return of amounts required to be repaid by such **Executive Officer** pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. **Dodd-Frank 954 Costs** do not include the payment, return, reimbursement; disgorgement or restitution of any such amounts requested or required to be repaid by such **Insured Person** pursuant to Section 954.

All other terms, conditions and exclusions of this Policy remain unchanged.

| 1 | 1 |
|---|---|

ML MAN 5 Ed 01/15



## Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

### (A Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 41

| | |
|---|---|
| **Effective Date:** | May 6, 2015 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### POLICY PERIOD EXTENSION

In consideration of the additional premium of $29,239 charged, it is hereby understood and agreed that Item II POLICY PERIOD of the declarations is amended to read as follows:

Item II.  POLICY PERIOD:    Inception Date: January 2, 2015 Expiration Date:  May 6, 2016

(12:01am at the address set forth in Item I)

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O Endorsement Form US/D&O.67 (ED 01 00)



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 42

| | |
|---|---|
| **Effective Date:** | May 6, 2016 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### POLICY PERIOD EXTENSION

In consideration of the additional premium of $66,150 charged, it is hereby understood and agreed that Item II POLICY PERIOD of the declarations is amended to read as follows:

Item II.  POLICY PERIOD:    Inception Date: January 2, 2015 Expiration Date: May 6, 2017

(12:01am at the address set forth in Item I)

All other terms, conditions, and exclusions of this Policy remain unchanged.

D&O Endorsement Form US/D&O.67 (ED 01 00)



## Executive Advantage Policy

### LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 43

| | |
|---|---|
| **Effective Date:** | May 6, 2017 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### POLICY PERIOD EXTENSION

In consideration of the additional premium of $79,380.00 charged, it is hereby understood and agreed that Item II POLICY PERIOD of the declarations is amended to read as follows:

Item II.  POLICY PERIOD:     Inception Date: January 2, 2015 Expiration Date:  May 6, 2018

(12:01am at the address set forth in Item I)

All other terms, conditions, and exclusions of this Policy remain unchanged.



# Executive Advantage Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 44

| | |
|---|---|
| **Effective Date:** | May 6, 2017 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### AMEND ADDRESS ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that **Item II** of the **Policy Declarations** is deleted and replaced with the following:

**ITEM II:    ADDRESS:**    1860 Montreal Road
Tucker, GA 30084

All other terms, conditions, and exclusions of this Policy remain unchanged.

**Private Advantage Policy**



## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 45

| | |
|---|---|
| **Effective Date:** | May 6, 2018 |
| **Policy Number:** | DONYAAXOGP002 |
| **Issued To:** | Cocrystal Pharma, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### EXTENSION ENDORSEMENT

In consideration of the additional premium of **$3,255.00**, it is hereby understood and agreed that **Policy** is amended as follows:

**ITEM III. POLICY PERIOD:**     Inception Date:        January 2, 2015
Expiration Date:       May 21, 2018
(12:01 A.M. at the address set forth in Item I)

All other terms, conditions, and exclusions of this **Policy** remain unchanged.