IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**LIBERTY INSURANCE UNDERWRITERS, INC.**,

       *Plaintiff,*

  v.

**COCRYSTAL PHARMA, INC.**,

       *Defendant.*

Case No. 1:19-cv-02281-JDW-CJB

## **MEMORANDUM**

"I say what I mean, and I do what I say."[1] Vincent Hanna wasn't talking about contracts, but he may as well have been. When parties write a contract, courts presume that they say what they mean and expect them to do what they say, but not more than they say. In this coverage dispute, the Parties used the term "Wrongful Act" and defined its meaning. The Court presumes that they meant what they said, and the plain meaning of their definition dictates that there is no coverage for any of the underlying actions that Cocrystal Pharma, Inc. has tendered to Liberty Underwriters Insurance, Inc. Liberty is entitled to a declaration of no coverage and no bad faith, recoupment of defense costs, and summary judgment on all but one of Cocrystal's counterclaims.

---

[1] Heat (Warner Bros. Pictures 1995).

I.  **BACKGROUND**

   A.  **The Policy**

Cocrystal Pharma, Inc. was formed on April 15, 2014, following a reverse merger that took place in January 2014 between Biozone Pharmaceuticals, Inc. and Cocrystal Discovery, Inc. ("Cocrystal Discovery"). Cocrystal is incorporated in Delaware, but it is headquartered in Washington.

In January 2015, Liberty Underwriters Insurance, Inc. sold Cocrystal an Executive Advantage Policy, policy no. DONYAAXOGP002 (the "Policy"),[2] which covered a policy period of January 2, 2015, to May 6, 2018 (the "Policy Period"). The Policy is a claims-made policy that provides coverage for claims made during the Policy Period that arise from wrongful acts by Cocrystal's directors and officers ("D&Os"). The Policy lists Cocrystal as the Insured Organization. (*See* Policy § 25.9; Item I of Declarations.) Cocrystal's "duly elected or appointed directors or officers" are Insured Persons. (Policy § 25.10(a).) The Policy covers losses incurred from a "Wrongful Act," which is "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the Insured Persons in their capacities as such ...." (Policy §§ 1.1–1.3, 25.20(a).) The Policy also contains a relation-back provision that makes clear that "[a]ll Claims arising from the same Wrongful Act or Interrelated Wrongful Acts shall be deemed one Claim and subject to a single limit of liability. Such Claim shall be

---

[2]   The Policy is docketed at D.I. 1-1.

deemed first made on the date the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period." (Policy § 9.2.) In the event that Liberty advanced defense costs pursuant to the Policy and "it is determined by … litigation … that any such Defense Costs are not covered under this Policy, the Insureds agree to repay the Insurer the amount of such Defense Costs not covered." (Policy § 3.3.)

### B. The SEC Investigation

On or about October 2, 2015, the U.S. Securities and Exchange Commission issued a subpoena *duces tecum* to Cocrystal in connection with an SEC investigation (the "SEC Investigation"). The subpoena directed Cocrystal to produce numerous categories of documents from the time period of January 1, 2011, to the date of the subpoena, including documents pertaining to Biozone.

On February 5, 2016, Cocrystal provided notice of the subpoena to Liberty. After receiving the notice and reviewing the subpoena, Liberty took the position that there was no coverage for the SEC Investigation because the subpoena did not constitute a "Claim" under the Policy. On January 25, 2017, Cocrystal continued to request coverage in connection with the original subpoena, as well as additional subpoenas that the SEC had issued to two former D&Os of Biozone, Elliot Maza and Brian Keller. On February 2, 2017, Liberty reversed course, agreed with Cocrystal that the SEC Investigation satisfied the Policy's definition of "Claim," and indicated that it would send a "supplemental reservation of rights letter." (D.I. 89-1, Ex. G.) As a result, Liberty agreed to reimburse Cocrystal

3

$986,025.80 for expenses incurred in connection with the SEC Investigation. Liberty never issued a supplemental reservation of rights letter.

On or about September 7, 2018, following its investigation, the SEC filed suit in the United States District Court for the Southern District of New York, alleging that numerous individuals and affiliated entities had violated the Securities Act of 1933 and the Securities Exchange Act of 1934 by engaging in "three highly profitable 'pump-and-dump' schemes" that had enriched the defendants and left retail investors holding worthless shares (the "SEC Action"). (D.I. 84-1, Ex. K ¶ 1.) The first of those schemes related to Biozone, which the SEC referred to as "Company A." (*Id.* at ¶ 54.) The SEC alleged that between August and December of 2013, Phillip Frost, Elliot Maza, Brian Keller, and various other defendants engaged in a pump-and-dump scheme to inflate the value of Biozone's shares in order to enrich themselves and their affiliates (the "Pump-and-Dump Scheme"). According to the SEC, Mr. Maza was the CEO of Biozone from June 2011 to January 2014, and Mr. Keller was Biozone's Chief Scientific Officer from March 2011 to January 2014. The SEC also alleged that Mr. Frost was an investor who exercised significant control over Biozone's management, and that all three men served as Biozone's board members and owned a significant portion of the company's outstanding shares. Following the merger between Biozone and Cocrystal Discovery in 2014, Messrs. Frost, Maza, and Keller all became Cocrystal D&Os.

### C. The Derivative Actions

After the SEC filed its Complaint in September 2018, Cocrystal shareholders filed multiple lawsuits against Cocrystal (as the successor entity of Biozone) and Cocrystal's D&Os, alleging violations of the Exchange Act and various state laws. The complaints allege that Cocrystal was harmed by the Pump-and-Dump Scheme that began in September 2013 and that the company suffered further harm when its D&Os continued to issue false or misleading statements, year after year, that did not disclose the scheme and the material related-party transactions that were part of it. Those complaints include: *Anthony Pepe v. Cocrystal Pharma, Inc. f/k/a Biozone Pharmaceuticals, Inc., et al.*, No. 2:18-cv-14091 (DNJ); *Susan S. Church v. Elliot Maza, et al.*, No. 2:19-cv-80 (W.D. Wash.); and *Trent Nichols, et al. v. Elliot Maza, et al.*, No. 2:19-cv-16751 (DNJ) (the "Derivative Actions").

Cocrystal provided Liberty with notice of the SEC Action and the Derivative Actions. Liberty denied coverage, asserting that pursuant to the Policy, all of the allegations in the various complaints are deemed to have occurred prior to December 27, 2013, so the Policy's Prior Acts Exclusion bars coverage. In addition, Liberty advised Cocrystal that the Prior Acts Exclusion precluded coverage for the SEC Investigation, so Liberty sought to recoup the defense costs that it had advanced to Cocrystal in connection with that investigation. In the meantime, Cocrystal paid $375,000 towards Mr. Frost's defense, in compromise and resolution of his indemnity claims in connection with the SEC Investigation, the SEC Action, and the Derivative Actions.

### D. The Present Litigation

On December 16, 2019, Liberty filed a Complaint against Cocrystal in this Court, seeking a declaratory judgment that: 1) the Policy does not provide coverage for the Derivative Actions; 2) the Policy does not provide coverage for the SEC Investigation or the SEC Action; and 3) Liberty did not engage in bad faith conduct. Liberty also asserts a claim to recoup the approximately $1M in defense costs that it advanced to Cocrystal in connection with the SEC Investigation. In a Second Amended Counterclaim, Cocrystal asserts six claims for relief against Liberty, including 1) breach of contract, 2) declaratory judgment, 3) bad faith, 4) violations of the Washington Consumer Protection Act ("CPA"), 5) violations of the Washington Fair Insurance Conduct Act ("IFCA"), and 6) reformation of contract. Cocrystal sought leave to amend its pleadings and file a Third Amended Counterclaim to assert claims based on a separate insurance policy that Liberty had issued to Biozone before it merged with Cocrystal Discovery (the "Biozone Policy"). The Court denied that motion. As a result, the Biozone Policy is not at issue in this case. The Parties have each filed cross-motions for summary judgment, and those motions are ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* (quotation omitted). Rather, "[w]hen confronted with cross-motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

7

## III. DISCUSSION

### A. Choice Of Law

Where, as here, a federal court exercises diversity of citizenship jurisdiction, it "employs the choice-of-law principles of its forum state to determine which substantive law governs whether a party is entitled to judgment as a matter of law." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Liberty argues that Delaware law should apply (or, in the alternative, New York or Georgia law), while Cocrystal contends that Washington law should govern this dispute. Because neither Party engaged in a meaningful choice-of-law analysis with respect to New York or Georgia law (including identifying any conflict with those laws), the Court does not address them and, instead, confines its analysis to conflicts between Delaware and Washington law, if any.

Pursuant to Delaware's choice-of-law principles, the Court must first determine whether there is an actual conflict between Delaware and Washington law. *See Shook & Fletcher Asbestos Settlement Tr. v. Safety Nat. Cas. Corp.*, 909 A.2d 125, 128 (Del. 2006). To make this determination, the Court considers "a single and simple query: does application of the competing laws yield the same result?" *Laugelle v. Bell Helicopter Textron, Inc.*, No. 12-cv-54, 2013 WL 5460164, at *2 (Del. Super. Ct. Oct. 1, 2013). If the outcome would be the same under either state's law, then "there is a 'false conflict,' and the Court should avoid the choice-of-law analysis altogether." *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010). If, however, a true conflict exists, the Court must apply

the "most significant relationship" test to determine which state's law should apply. *Shook*, 909 A.2d at 128. "Choice-of-law determinations must be made as to each issue when presented, not to the case as a whole." *Laugelle*, 2013 WL 5460164 at *3 (citations omitted).

In its Second Amended Counterclaim, Cocrystal asserts claims for alleged violations of two Washington statutes: the CPA and the IFCA. This does not present a choice-of-law problem. Neither Party identifies a conflict between Delaware law and these two statutes, and the mere fact that Delaware does not have similar statutes does not demonstrate a conflict. Instead, "the question for each statute is whether, by its own terms, it applies to the present case." *Bankers Life & Cas. Co. v. Miller*, No. 14-cv-3165, 2015 WL 515965, at *6 n.5 (N.D. Ill. Feb. 6, 2015) (collecting cases). Thus, the Court will consider the merits of Cocrystal's statutory claims.

With respect to the Parties' contract claims, Delaware law will apply. The Policy does not contain a choice-of-law provision. While the Parties dispute whether Delaware or Washington law should govern, neither Party has shown (or even asserted) that there is an actual conflict between the two states' laws. In fact, Cocrystal contends that the result would be the same under Delaware or Washington law. For its part, the Court has not identified any meaningful differences between the two states' laws as to breach of contract claims, so any alleged conflict is a false one. The Court will therefore apply Delaware law to the Parties' contract claims.

There appears to be an actual conflict between Delaware and Washington law with respect to Cocrystal's claim for common law bad faith. Under Washington law, an insured may pursue a bad faith claim even in the absence of coverage. *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (citation omitted). Under Delaware law, however, "an insurer's actions only give rise to a bad faith breach of contract claim if the insurer's actions first breach the contract." *GEICO Gen. Ins. Co. v. Green*, --- A.3d ----, 2022 WL 1052195, at *8 (Del. Apr. 8, 2022). Because application of these competing laws could create distinct results, there is an actual conflict for the Court to resolve.

Under Delaware law, bad faith claims sound in contract. *See Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 512 (Del. 2016) (citation omitted). Therefore, the Court determines which state has the most significant relationship to the matter by analyzing the various contract-related contacts set forth in the Restatement (Second) Conflict of Laws. *See Buhl Bldg., L.L.C. v. Commonwealth Land Title Ins. Co.*, No. N17C-03-093, 2019 WL 3916615, at *5-6 (Del. Super. Ct. Aug. 19, 2019); *AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*, No. 03C-12-232, 2007 WL 1849056, at *4-6 (Del. Super. Ct. June 25, 2007). The Parties relied on these same contacts for their respective choice-of-law analyses, and neither Party has argued that the Court should look to tort-related contacts to resolve the issue.

In insurance coverage disputes, courts look to Sections 193 and 188 of the Restatement. However, because Section 193 of the Restatement "was developed in connection with 'fire, surety, and casualty insurance contracts[,]' [it] is of limited utility in

10

cases, like this one, in which the policy insures risks that are not confined to one particular location." *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. N20C-04-190, 2021 WL 6068046, at *8 (Del. Super. Ct. Dec. 22, 2021) (quotation omitted). Instead, the Court considers the "broader subject-matter-specific factors" set forth in Section 188, including the places of contracting, negotiating, and performance, the location of the contract's subject matter, and the parties' respective domiciles and places of incorporation and business. *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 896 (Del. 2021) (quotation omitted); Restatement (Second) of Conflict of Laws § 188 (1971). In addition, the Court must consider those contacts in light of the following overarching principles from Section 6: (1) the needs of the interstate system, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and their interest in the determination of the issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) the certainty, predictability and uniformity of result, and (7) the ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6 (1971).

The various "factors suggest that the state of incorporation is the center of gravity of the typical D&O policy[.]" *RSUI*, 248 A.3d at 901. As a result, "Delaware court[s] consistently have held that Delaware law applies to disputes over [D&O] insurance coverage where, as here, the insured companies are Delaware corporations." *Ferrellgas Partners L.P. v. Zurich Am. Ins. Co.*, No. N19C-05-275, 2020 WL 363677, at *4 (Del. Super.

11

Ct. Jan. 21, 2020), *appeal denied*, 2020 WL 764155 (Del. Super. Ct. Feb. 17, 2020); *see also Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 18-cv-1510, 2020 WL 3470473, at *4 (D. Del. June 25, 2020); *IDT Corp. v. U.S. Specialty Ins. Co.*, No. N18C-03-032, 2019 WL 413692, at *6 (Del. Super. Ct. Jan. 31, 2019). In fact, the Delaware Supreme Court has made clear that where "the insured risk is the directors' and officers' 'honesty and fidelity' to the corporation' … and the choice of law is between headquarters or the state of incorporation, the state of incorporation has the most significant interest." *RSUI*, 248 A.3d at 900 (quotation omitted).

The fact that Cocrystal is headquartered in Washington is not a sufficient reason to apply Washington law. Likewise, the other facts on which Cocrystal relies do not tip the balance toward Washington. Cocrystal's emphasis on its physical location in Washington "underrates the significance of [it's] status as a Delaware corporation—an entity formed and existing by virtue of the Delaware Constitution and the Delaware General Corporation Law." *RSUI*, 248 A.3d at 901. It is more significant that the *Church* Action was filed in federal court in Washington and that the plaintiffs assert claims under Washington state law. However, this case concerns coverage for many matters, under several state and federal laws, so the mere fact that one case implicates Washington is not a reason to apply Washington law. Instead, Delaware law applies because Cocrystal is a Delaware corporation, and the bad faith claim arises from a D&O coverage dispute.

B.  **Contract Claims**

1.  **The SEC Investigation**

Under Delaware law, "[t]he interpretation of an insurance policy is a question of law" that begins with the plain language of the Policy. *RSUI*, 248 A.3d at 905 (quotation omitted). "If the contract language is 'clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning.'" *Id.* (same). Cocrystal is the Insured Organization under the Policy. (*See* Policy § 25.9; Item I of Declarations.) Cocrystal's "duly elected or appointed directors or officers" are Insured Persons. (Policy § 25.10(a).) The Policy covers losses incurred from a "Wrongful Act." (Policy §§ 1.1–1.3.) A Wrongful Act is "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the Insured Persons **in their capacities as such** ...." (Policy § 25.20(a) (emphasis added).) The plain and unambiguous language of the Policy, as a whole, makes clear that a "Wrongful Act" is an act or omission by Cocrystal's directors or officers while wearing Cocrystal hats, *i.e.* acting as Cocrystal directors and officers, as opposed to acting in their individual capacities or on behalf of another organization.

The subject of the SEC Investigation—the Pump-and-Dump Scheme—occurred before Biozone and Cocrystal Discovery merged to create Cocrystal. Indeed, as part of its investigation, the SEC subpoenaed documents from Cocrystal "that by their very nature, pre-dated the reverse merger[.]" (D.I. 87 at ¶ 14.) The resulting SEC Action also focused

on conduct that occurred between August and December of 2013. Though Messrs. Frost, Maza, and Keller all became D&Os of Cocrystal once Cocrystal was formed in 2014, none of them engaged in the Pump-and-Dump Scheme in their capacities as *Cocrystal* D&Os. They couldn't have because Cocrystal did not exist yet. Instead, they engaged in the scheme in their capacities as D&Os of Biozone. Because they were not acting for Cocrystal when they engaged in the Pump-and-Dump Scheme, that conduct is not a Wrongful Act that triggers coverage under the Policy.

The Policy also makes clear that "[i]f it is determined by … litigation … that any such Defense Costs are not covered under this Policy, the Insureds agree to repay the Insurer the amount of such Defense Costs not covered." (Policy § 3.3.) Pursuant to the plain language of the Policy, Cocrystal must repay the Defense Costs that Liberty advanced to Cocrystal for the SEC Investigation, now that the Court has determined that the Policy does not cover those costs. Cocrystal does not dispute the plain meaning of this provision. Instead, it contends that Liberty waived the right to recoup these funds because Liberty did not issue an updated reservation of rights letter when it advanced them.

Under Delaware law, waiver "may 'not … be invoked to bring within the coverage of an insurance policy risks, property or losses not covered by [the policy's] terms or expressly excluded therefrom.'" *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) (quoting *Nat'l Fire Ins. Co. of Hartford v. E. Shore Lab'ys, Inc.*, 301 A.2d 526, 530 (Del. Super. Ct. 1973)). In other words, the doctrine of waiver does not operate to

expand or create coverage that the Parties did not negotiate and for which the Policy does not provide. See *Nat'l Fire*, 301 A.2d at 530. Thus, even if Liberty committed a waiver when it advanced the defense costs to Cocrystal without a simultaneous reservation of rights, it would not create coverage for wrongful acts that the Policy does not cover.

Whether Liberty was required to advance defense costs pursuant to the Biozone Policy is not before the Court. In this action, Liberty seeks recoupment pursuant to terms of the Policy issued to Cocrystal. Any claim that Cocrystal has for coverage under the separate Biozone Policy is not before the Court. Therefore, Liberty is entitled to summary judgment on Counts II and III of its Complaint, and Cocrystal must repay the defense costs that Liberty advanced to Cocrystal in connection with the SEC Investigation. Liberty is also entitled to summary judgment on Cocrystal's breach of contract and declaratory judgment claims set forth in the First and Second claims for relief in its Second Amended Counterclaim.

### 2. The Derivative Actions

There is no dispute that the Policy is a claims-made policy. There is also no dispute that the Policy expired as of May 6, 2018, but the Derivative Actions, *i.e.* the "Claims," were not made until September 2018 or later. The Policy's relation-back provision does not bring those claims within coverage. The Derivative Actions arise from the Pump-and-Dump Scheme outlined in the SEC Action. In fact, those suits were filed after the SEC filed its complaint, and the suits mirror the allegations set forth in the SEC Action. In addition,

the Derivative Actions assert that Cocrystal suffered financial harm once the SEC's allegations became public. However, the relation-back provision applies only when a claim arises from a Wrongful Act or Interrelated Wrongful Act. Because the Pump-and-Dump Scheme is neither a Wrongful Act nor an Interrelated Wrongful Act, there is nothing to which the Derivative Actions could relate back. As those claims were not made during the applicable Policy Period, Cocrystal is not entitled to coverage for the Derivative Actions. Likewise, Liberty is not required to reimburse Cocrystal for the amounts that Cocrystal paid to settle claims on behalf of Mr. Frost. As a result, Liberty is entitled to summary judgment on Count I of its Complaint, as well as Cocrystal's breach of contract and declaratory judgment counterclaims, set forth in its First and Second claims for relief.

### 3. Reformation

Given the Court's rulings on coverage, Cocrystal's claim for reformation of the Policy is non-justiciable. Cocrystal asserted its claim for reformation only "[t]o the extent that" the Court interpreted the Policy's Severability Clause to apply to the Prior Acts Exclusion. (D.I. 33 ¶ 73.) The Court's interpretation of "Wrongful Act" and ultimate determination of no coverage did not turn on any of the Policy's exclusions or their interplay with the Severability Clause. As a result, the Court need not address Cocrystal's reformation claim. Thus, the Court will dismiss Cocrystal's Sixth claim for relief in its Second Amended Counterclaim.

### C. Bad Faith Claims

#### 1. Common law

To establish a bad faith claim under Delaware common law, a claimant "must show that the insurer's *refusal to honor its contractual obligation* was clearly without any reasonable justification." GEICO, 2022 WL 1052195 at *8 (original emphasis) (quoting *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. Super. Ct. 1982)). "In other words, an insurer's actions only give rise to a bad faith breach of contract claim if the insurer's actions first breach the contract." *Id.* Thus, in order to prevail on its bad faith claim, Cocrystal must first demonstrate that Liberty has breached the Policy. *See id.* The Court has determined that Cocrystal cannot prevail on its breach of contract claims against Liberty. Upon a finding of no coverage, Cocrystal cannot prevail on its bad faith claim. *See id.* at *9 ("Without a showing of an underlying breach, there can be no claim for bad faith breach of contract.); *Monzo v. Nationwide Prop. & Cas. Ins. Co.*, No. K18C-11-003, 2022 WL 247534, at *6 (Del. Super. Ct. Jan. 27, 2022); *Bramble v. Old Republic Gen. Ins. Corp.*, No. S16C-06-025, 2017 WL 345144, at *9 (Del. Super. Ct. Jan. 20, 2017); *Re Suter v. State Farm Fire & Cas. Co.*, No. S15C-06-025, 2016 WL 5867435, at *3 (Del. Super. Ct. Oct. 6, 2016); *AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*, No. 03C-12-232, 2006 WL 267135, at *5 (Del. Super. Ct. Jan. 31, 2006). Liberty is entitled to summary judgment on Cocrystal's bad faith claim, set forth in its Third counterclaim.

### 2. Washington Consumer Protection Act

To prevail on its CPA claim, Cocrystal "must prove (1) an unfair or deceptive act or practice (2) in trade or commerce (3) which affects the public interest (4) and causes injury to the plaintiff's business or property, and (5) a causal link between the act and the injury." *Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1221 (Wash. 2019). Liberty is entitled to summary judgment on Cocrystal's claim for alleged violations of the Washington CPA because it cannot satisfy the fourth element. An insurer's wrongful denial of contracted-for insurance benefits is an injury to business or property. *Id.* at 1222. However, the Court has already determined that Cocrystal is not entitled to coverage for the SEC Investigation, SEC Action, and Derivative Actions, so Cocrystal cannot demonstrate that Liberty wrongfully deprived it of contracted-for benefits under the Policy. Nor has Cocrystal asserted any other business or property injuries, apart from the alleged wrongful denial of benefits. Because Cocrystal cannot satisfy the injury requirement, it cannot prevail on its CPA claim. Liberty is entitled to summary judgment on the Fourth counterclaim.

### 3. Washington Insurance Fair Conduct Act

The entry of summary judgment on Cocrystal's bad faith claim is not dispositive of its claim under the Washington IFCA. To prevail on its IFCA claim, Cocrystal must prove, *inter alia*, that Liberty "unreasonably denied a claim for coverage or payment of benefits." RCW § 48.30.015(a). However, "[t]here is an abundance of case law that an insurance company can be held liable for bad faith and unreasonable conduct in the investigation

and denial of a claim even where it ultimately turns out that there was no coverage." *Wall v. Country Mut. Ins. Co.*, 319 F. Supp. 3d 1227, 1233 (W.D. Wash. 2018); *see also Cumming v. United Servs. Auto. Ass'n*, 15 Wash. App. 2d 1044, 2020 WL 7233162, at *14 (Wash. Ct. App. 2020). Moreover, the question under the IFCA is whether Liberty's "denial of coverage was unreasonable when it occurred, not whether later developments could have vindicated the Insurer's decision." *Wall*, 319 F. Supp. 3d at 1233 (quoting *Fireman's Fund Ins. Companies v. Alaskan Pride P'ship*, 106 F.3d 1465, 1470 (9th Cir. 1997) (applying Washington law) (citation omitted)). Liberty's arguments as to why there is no coverage under the Policy do not speak to this issue. Thus, the Court will not grant summary judgment on Cocrystal's Fifth claim for relief.

## IV. CONCLUSION

Liberty has established that it is entitled to summary judgment on its declaratory judgment claims, its claim for recoupment of defense costs, and Cocrystal's First, Second, Third, and Fourth claims for relief. Also, the Court will dismiss Cocrystal's Sixth claim for relief as non-justiciable. However, Cocrystal's Fifth claim for violation of the IFCA survives summary judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J**.
**United States District Judge**

Date: May 23, 2022